FILED
US DISTRICT COURT
DISTRICT OF ALASKA

2005 DEC -9 PM 3: 25

JEREMIAH A. COLLINS
BREDHOFF & KAISER, P.L.L.C.
805 FIFTEENTH STREET, N.W.
WASHINGTON, D.C. 20005
PHONE: 202-842-2600
FAX: 202-842-1888

DOUGLAS S. PARKER
PRESTON GATES & ELLIS LLP
420 L Street, Suite 400
Anchorage, AK 99501-1971
Phone: 907-276-1969
Fax: 907-276-1365

Attorneys for Defendant National
Education Association

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | |
| Plaintiff, | **Case No. A01-0225 CV (JKS)** |
| CAROL CHRISTOPHER, JULIE BHEND and CARMELA CHAMARA, | |
| Plaintiff-Intervenors, | |
| v. | |
| NATIONAL EDUCATION ASSOCIATION-ALASKA and NATIONAL EDUCATION ASSOCIATION, | |
| Defendants. | |

## RENEWED MOTION OF DEFENDANT NATIONAL EDUCATION ASSOCIATION FOR SUMMARY JUDGMENT

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

Renewed Motion of National Education
Association for Summary Judgment
Page 1 of 4

Defendant National Education Association ("NEA"), by and through its undersigned counsel, respectfully moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment in its favor on all claims asserted by Plaintiff and Plaintiff-Intervenors.

The grounds for this Motion are fully set forth in the accompanying Memorandum of Law.

This motion presents issues unique to NEA that were raised in the motion for summary judgment filed by NEA on August 29, 2003, which the Court did not reach because it granted summary judgment to both NEA-Alaska and NEA on grounds raised by NEA-Alaska's motion for summary judgment. The Ninth Circuit has reversed that order, without reaching the issues unique to NEA, and NEA therefore wishes to renew its motion on those issues, with the exception of certain arguments that have been mooted by developments in the litigation subsequent to the filing of NEA's initial motion.

This renewed motion and the accompanying memorandum of law supercede NEA's earlier motion. However, NEA's renewed motion is based on the evidentiary materials that were filed in support of the earlier motion: the Declaration of Patricia Ann Orrange and the exhibits thereto, the Declaration of Vernon Marshall and the exhibit thereto, the Declaration of Thomas E. Harvey, and the Affidavit of John Bourgault in Support of NEA's Motion for Summary Judgment and the exhibits thereto (the latter contained in the Appendix to Memorandum of Law in Support of Motion of Defendant National Education Association

Renewed Motion of National Education
Association for Summary Judgment
Page 2 of 4

for Summary Judgment), all filed on or about August 29, 2003; and the Affidavit of

Jeremiah A. Collins in Support of Reply Memorandum in Support of Defendant National

Education Association's Motion for Summary Judgment and the exhibits thereto (contained

in the Appendix to Reply Memorandum in Support of Motion of Defendant National

Education Association for Summary Judgment), filed on or about October 30, 2003; and

the summary judgment exhibits submitted by plaintiffs and by NEA-Alaska.

    **WHEREFORE**, NEA respectfully requests that judgment be entered in its favor on

all claims asserted in the Amended Complaint of plaintiff Equal Employment Opportunity

Commission and the Second Amended Complaint of Plaintiff-Intervenors Julie Bhend,

Carmela Charmara, and Carol Christopher.

    DATED at Anchorage Alaska on December 9, 2005.

        Respectfully submitted,

        Attorneys for Defendant, National Education
Association

        PRESTON GATES & ELLIS, LLP

        By _____

        Douglas S. Parker, ABA # 8311168

        BREDHOFF & KAISER, P.L.L.C.

        By _____

        Jeremiah A. Collins

PRESTON GATES & ELLIS LLP
4201 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of December, 2005 a copy of the foregoing was served by fax and Express Mail on the following:

Carmen Flores
Senior Trial Attorney
Equal Employment Opportunity Commission
909 First Avenue, Suite 400
Seattle, WA 98104-1061

Terry A. Venneberg
625 Commerce Street, Suite 460
Tacoma, WA 98402

Kenneth Friedman
Friedman, Rubin & White
1126 Highland Avenue
Bremerton, WA 98337

Leslie Longenbaugh
Longenbaugh Law Firm, LLC
624 Main Street
Juneau, AK 99801

Pamela McKibben, Legal Secretary

K:\49277\00001\DSP\DSP_P21H4

Renewed Motion of National Education
Association for Summary Judgment
Page 4 of 4

JEREMIAH A. COLLINS
BREDHOFF & KAISER, P.L.L.C.
805 FIFTEENTH STREET, N.W.
WASHINGTON, D.C. 20005
PHONE: 202-842-2600
FAX: 202-842-1888

DOUGLAS S. PARKER
PRESTON GATES & ELLIS LLP
420 L Street, Suite 400
Anchorage, AK 99501-1971
Phone: 907-276-1969
Fax: 907-276-1365

Attorneys for Defendant National
Education Association

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

EQUAL EMPLOYMENT OPPORTUNITY)
COMMISSION,                  )
                             )
    Plaintiff,               )    **Case No. A01-0225 CV (JKS)**
                             )
CAROL CHRISTOPHER, JULIE BHEND)
and CARMELA CHAMARA,         )
                             )    **MEMORANDUM OF LAW IN**
    Plaintiff-Intervenors,   )    **SUPPORT OF RENEWED**
                             )    **MOTION OF DEFENDANT**
                             )    **NATIONAL EDUCATION**
    v.                       )    **ASSOCIATION FOR SUMMARY**
                             )    **JUDGMENT**
NATIONAL EDUCATION           )
ASSOCIATION-ALASKA and       )
NATIONAL EDUCATION           )
ASSOCIATION,                 )
                             )
    Defendants.              )
_____)

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

Defendant National Education Association ("NEA") submits this memorandum of law in support of its renewed motion for summary judgment on all claims asserted by plaintiff Equal Employment Opportunity Commission ("EEOC") and plaintiff-intervenors Julie Bhend, Carmela Chamara, and Carol Christopher. (We will refer to EEOC and the plaintiff-intervenors collectively as "plaintiffs.")

In its order dated November 18, 2002, granting plaintiffs' motion to join NEA as a defendant, this Court noted that "NEA-AK has raised substantial questions" regarding whether NEA is a proper party defendant, but "[t]hese defenses are better raised by NEA and addressed in a dispositive motion." NEA filed such a motion in August 2003, but this Court did not reach the issues pertaining to NEA's status, because the Court granted summary judgment to both NEA and NEA-Alaska on other grounds. The Ninth Circuit recently reversed that ruling, without reaching the issues unique to NEA that are presented by this motion. *See EEOC v. National Education Association-Alaska*, 422 F.3d 840 (9th Cir. 2005).

NEA therefore wishes to renew its motion for summary judgment. However, since the filing of that motion, the intervenors have voluntarily dismissed their state-law claims. As a result, the issues presented by NEA's motion have been narrowed. For that reason, and to clarify the arguments in other respects, NEA submits this memorandum, which supercedes NEA's previous memoranda in support of its motion for summary judgment.[1]

_____

[1] All references in this memorandum to evidentiary materials are to the materials submitted in support of NEA's August 29, 2003 memorandum and October 31, 2003 reply memorandum in

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

## INTRODUCTION

As we will show, NEA is not a proper defendant in this case for two reasons.

First, it is undisputed that NEA is not the intervenors' employer; and as a general matter, under Title VII a defendant is "not liable for discrimination [if it] was not the Plaintiffs' employer." *Anderson v. Pacific Mar. Ass'n*, 336 F.3d 924, 926 (9th Cir. 2003). The Ninth Circuit caselaw recognizes only a limited exception to that rule, confined to situations in which the

plaintiff's employer was not responsible for any discriminatory conduct but the plaintiff was subjected to discrimination by a third party that had a "peculiar degree of control" over the employer. *Id.* This case does not fall within that exception, because Tom Harvey's behavior toward the intervenors and other members of the NEA-Alaska staff was subject to the direction and control of NEA-Alaska, not NEA.

Plaintiffs admit that this was true once Harvey became NEA-Alaska's permanent Assistant Executive Director; and each of the intervenors has testified that the conduct for which she seeks to recover occurred only after that point. But, even during the earlier period in which Harvey served as NEA-Alaska's *interim* Assistant Executive Director, NEA did not have control over his conduct toward the intervenors, and hence could be held liable under *Anderson* for any of Harvey's conduct.

support of NEA's original motion for summary judgment, and to summary judgment exhibits submitted by plaintiffs and by NEA-Alaska.

Memorandum of Law in Support of Renewed Motion of
Defendant National Education Association for Summary Judgment
Page 3 of 34

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

Second, NEA is not a proper defendant because it was not named in any EEOC

charge. Plaintiffs cannot avail themselves of the exception that applies where the acts

alleged in a charge were performed by a party not named in the charge, and the party

should have anticipated being named in the subsequent suit: the conduct alleged in the

intervenors' charges was *not* undertaken by NEA, and NEA had no reason to anticipate

that it would be sued for that conduct.

For both of these reasons, NEA does not belong in this litigation, and summary

judgment should be entered in its favor.

## STATEMENT OF FACTS

### A.    NEA's Non-Involvement in Matters Pertaining to State Affiliate Employees

NEA is a labor organization comprised of more than 2.7 million members, the vast

majority of whom are employees of public schools, colleges, and universities throughout

the United States. (Orrange Decl. ¶ 4.) NEA has members in every state, the District of

Columbia, Puerto Rico, and certain overseas schools operated by the Department of

Defense. (*Id.*) The overwhelming majority of NEA's employees are based in its

Washington, D.C., headquarters, with a small number of employees working out of field

offices located throughout the country. (*Id.* ¶ 1.)

NEA's members in each state also are members of a state affiliate such as NEA-

Alaska. (*Id.* ¶ 4.) These state affiliates are not subsidiaries of NEA; rather, each state

affiliate is an independent and autonomous organization. (*Id.* ¶ 5.) NEA does not impose

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

Memorandum of Law in Support of Renewed Motion of
Defendant National Education Association for Summary Judgment
Page 4 of 34

any conditions of affiliation on state affiliates that relate to the treatment of the state affiliates' employees or to those employees' terms and conditions of employment. (*Id.* ¶ 6; NEA Constitution and Bylaws (Orrange Decl. Exh. A).)

NEA-Alaska's bylaws provide that the legislative body of NEA-Alaska is the Delegate Assembly, composed of delegates elected from each local affiliate in the state. (Bylaws of NEA-Alaska, Inc. (Marshall Decl. Exh. A), Art. VI.) The bylaws further provide for an elected Board of Directors, which has "general charge of [the] work of the Association," including appointment of NEA-Alaska's Executive Director. (*Id.*, Art. III, § 2; Art. IV, § 1.) NEA does not select any members of NEA-Alaska's Board of Directors.[2]

The chief policy officer of NEA-Alaska is the President, who is elected by the NEA-Alaska membership. (*Id.*, Art. II, § 1.A; Art. III, § 1.A.4.) The chief staff member is the Executive Director, who "shall be an employee of NEA-Alaska under the terms established by the [NEA-Alaska] Board of Directors." (*Id.*, Art. II, § 2.) "He/she shall perform all duties necessary to put into effect the plans and policies of the Association, and with the approval of the [NEA-Alaska] Board of Directors, shall employ such other members of the staff and office force as may be necessary to carry out the work of the Association." *Id.*

---

[2] NEA-Alaska is divided into several regions, and regions are entitled to a representative on the Board of Directors for every 475 members in the region. (*Id.*, Art. III, §§ 2, 3.) One member of the Board of Directors holds the position of "NEA Director." (*Id.*, Art. II, § 1.C.) The "NEA Director," however, is not selected by NEA, but is elected by the NEA-Alaska membership. (*Id.*, Art. III, §§ 1.D.3, 4.A.) The function of the NEA Director is to "advocate NEA-Alaska's interests with the NEA." (*Id.*, Art. II, § 1.C.)

Memorandum of Law in Support of Renewed Motion of
Defendant National Education Association for Summary Judgment
Page 5 of 34

As the foregoing indicates, state affiliates of NEA, including NEA-Alaska, have sole authority and responsibility for directing the work of their employees, from the Executive Director on down. (Orrange Decl. ¶¶ 6-8.) Nothing in the governing documents of NEA or of NEA-Alaska gives NEA any authority or responsibility to direct the work of the employees of NEA-Alaska. And in point of fact there has *never* been an occasion in which NEA has directed, supervised or disciplined any employee of any state affiliate for any reason. *Id.*

## B.    The Unified State Executive Director Program

NEA has established a Unified State Executive Director Program ("USEDP") for the purpose of assisting state affiliates with the costs of employing Executive Directors. (App. Exh. 12, pp. 2-7; App. Exh. 47, p. 5; App. Exh. 52, p. 3.) If a state affiliate chooses to participate in the USEDP, its Executive Director is allowed to participate in certain NEA benefit programs (including in particular the NEA retirement program) that are available to employees of NEA, and NEA absorbs a portion of the cost of the Executive Director's salary and benefits, ranging from zero to 30%, depending on the size of the affiliate. (National Education Association Guidelines for the Unified State Executive Director Program ("USEDP Guidelines") (Orrange Decl. Exh. B), Art. V.)[3]

---

[3] Each USEDP state affiliate determines the salary and benefits of its Executive Director, within a range set by the USEDP Guidelines. The USEDP Executive Directors receive their paychecks from NEA, and NEA is reimbursed by the state affiliates at the specified percentage levels. (*Id.*, Arts. V, VI.)

Memorandum of Law in Support of Renewed Motion of
Defendant National Education Association for Summary Judgment
Page 6 of 34

In setting up this compensation arrangement, NEA and its affiliates did not alter the

fundamental policy and practice that only a state affiliate, and not NEA, is responsible for

the treatment of the affiliate's employees, including the hiring, directing, evaluating,

disciplining, and terminating of the affiliate's Executive Director.  Larry Diebold, who was

a USEDP Executive Director in Montana and subsequently was responsible for

administering the USEDP across the country from 1989 through 1999, testified as follows:

> The only contractual relationship between a USEDP executive
> director and the NEA was to be considered an NEA employee
> for the purposes of continuing in the retirement program.
>
> \*        \*        \*        \*
>
> And all of the things normally associated with employment
> [such as] hiring and firing and evaluating and so forth were, in
> fact, left to the states to do so.
>
> \*        \*        \*        \*
>
> [E]ven while I was the [USEDP] exec [in Montana], I thought
> like and behaved like the only employe[r] that I was obligated
> to was the board of directors of the [Montana Association of
> Educators].
>
> \*        \*        \*        \*
>
> And that certainly is the case. I know of no exception to that
> among all of the state executives that serve as USEDP execs.
> They are treated like and behave like they work for the state
> association.

(App. Ex. 46, pp. 7-8.)

Melvin Myler, who succeeded Mr. Diebold as principal administrator of the USEDP,

likewise explained that under the USEDP, "the NEA basically . . . is really an

administrative conduit to provide benefits, retirement, salary to the state executive

director," while "the conditions of employment, which are typically covered under an

employment contract, are with [the state affiliate]." (App. Exh. 49, pp. 5-6.)

Memorandum of Law in Support of Renewed Motion of
Defendant National Education Association for Summary Judgment
Page 7 of 34

Vernon Marshall, who participated in the USEDP as NEA-Alaska's Executive

Director during the period that Tom Harvey was Interim Assistant Executive Director and

Assistant Executive Director, testified to the same effect:

> [I]t was my understanding, since I was a member of the USEDP, that because of my participation – or payment from NEA, my compensation, that I could also participate in the NEA retirement plan.
>
>     \*      \*      \*      \*
>
> But in terms of my participation in the USEDP, and the way I understand the rules for that particular program, the NEA-Alaska board of directors interviewed me through its committees, they employed me, and they evaluate me, and they had the capacity to terminate my employment. NEA did not have the capacity to do that.
>
>     \*      \*      \*      \*
>
> I clearly understood that my working relationship, and whether I stayed in Alaska or not, was totally dependent upon the NEA-Alaska board of directors and my contract with them.

(App. Exh. 48, pp. 2-3.)

Patricia Orrange, who became NEA's Director of Human Resources in 1991 and

was directly involved in administering the USEDP, likewise attested that only a state

affiliate, not NEA, has "the authority to hire, supervise, direct, evaluate, discipline, or

terminate the Executive Director in a state affiliate that is a participant in the USEDP."

(Orrange Decl. ¶¶ 6-10.) And John Wilson, currently the Executive Director of NEA and

formerly a state executive director, testified that, insofar as "the authority the NEA would

have over them in a supervision/direction kind of way" is concerned, it makes "absolutely

no difference" whether a state Executive Director is or is not in the USEDP. (App. Exh.

52, pp. 3-4.) Wilson specifically added that, although NEA has a "zero tolerance policy"

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

with respect to harassment and discrimination, NEA has no authority to enforce that policy

with respect to a state Executive Director, even if the Executive Director is in the USEDP.

(*Id.*, p. 5.)

The USEDP Guidelines state that "[t]he USEDP Executive Director shall be an

employee of the NEA, and NEA shall make all mandatory federal state and other

deductions from his or her salary and benefits as applicable." (Orrange Decl. Exh. B, p. 5.)

That sentence is included in the Guidelines in order to enable the USEDP Executive

Directors to participate in certain NEA benefit programs which by their terms are available

only to "employees" of NEA. (Orrange Decl. ¶ 9.)[4] But the Guidelines explicitly provide

that the state affiliate, not NEA, has the authority to control and direct the activities of a

USEDP Executive Director:

> *Subject to the control and direction of the governing bodies and officers of the SA [i.e., the State Affiliate],* the USEDP Executive Director shall perform all the duties required of the SA executive director *as set forth in the SA's governing documents and policies*, which shall include, without limitation, administering the programs and activities of the SA, supervising and directing the staff of the SA, and performing such other duties consistent with the status and responsibilities of the position of SA executive director *as may be assigned to him or her from time to time by the governing bodies and officers of the SA*, or as customarily are performed by the chief administrative employee of organizations similar to the SA.

(Orrange Decl. Exh. B, p. 8) (emphasis added).[5]

---

[4] This explanation of the reason for the "employee" designation is confirmed by the fact that the designation appears in the section of the Guidelines entitled "Salary and Fringe Benefits of the USEDP Executive Director," in a sentence which goes on to address the subject of tax withholding. (Orrange Decl. Exh. B, p. 5.)

[5] That provision of the Guidelines goes on to state that "[i]t is expressly understood that the USEDP Executive Director shall not be required to take any action that is contrary to the governing

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

Memorandum of Law in Support of Renewed Motion of
Defendant National Education Association for Summary Judgment
Page 9 of 34

The undisputed fact, noted above, that there has never been an occasion in which NEA has directed, supervised or disciplined any employee of any state affiliate, including the Executive Director, for any reason, is just as true with respect to state affiliates that participate in the USEDP as it is with respect to those that do not. (Orrange Decl. ¶¶ 6-8.)

### C.    Tom Harvey's Employment by NEA-Alaska

Tom Harvey began his career as an association representative in the mid-1980's, when he was elected President of NEA's Maine state affiliate, the Maine Education Association. (App. Exh. 13, p. 2.) From 1986 to 1992, Harvey worked for the Texas State Teachers Association, an NEA state affiliate, ultimately serving as Director of Field Services for West Texas. (*Id.*, p. 4.) In 1992, Harvey was hired by the Teachers Association of Baltimore County, Maryland ("TABCO"), an NEA local affiliate, as its Executive Director. Harvey left TABCO in 1994 to become Executive Director of NEA's Mississippi state affiliate, the Mississippi Association of Educators ("MAE"). (*Id.*, p. 3.) MAE was a participant in the USEDP, so Harvey's salary and benefits were processed through that program. Harvey had not previously served as the Executive Director of any state affiliate, and had not previously participated in the USEDP.

---

documents or policies of NEA." *Id.* By its terms, that "underst[anding]" does not give NEA any power to control the day-to-day activities of a USEDP Executive Director; it simply declares a principle to which the *state affiliate* is required to adhere in *its* direction and control of those activities.

Memorandum of Law in Support of Renewed Motion of
Defendant National Education Association for Summary Judgment
Page 10 of 34

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

In September 1997, MAE renewed Harvey's contract for another three years (App. Exh. 16, p.6), but shortly after taking that action, the MAE Board of Directors decided to remove Harvey from his position. NEA was not involved in this decision. *(Id.*, pp. 9-16.) On February 17, 1998, MAE entered into a severance agreement with Harvey which provided that MAE would pay Harvey a lump sum upon his departure from the position and then would pay him his regular salary until August 31, 1999, or until he secured other employment, whichever occurred earlier. (App. Exh. 34, pp. 1-6.) NEA agreed that it would process these severance payments through the mechanism of the USEDP, and further agreed to send an NEA employee to act as Interim Executive Director of MAE until such time as MAE's financial obligation to Harvey ended. (App. Exh. 35, p. 1.)

At approximately the same time as Harvey was leaving MAE, the Assistant Executive Director of NEA-Alaska was taking an extended leave of absence. (App. Exh. 17, p. 2.) Vernon Marshall, the Executive Director of NEA-Alaska, contacted Nelson Okino, NEA's Regional Director for the Pacific Region, to determine whether Okino was aware of any individuals who might be interested in serving as NEA-Alaska's Interim Assistant Executive Director. *(Id.*, p. 3.) Okino learned that Harvey was available, and suggested that Marshall contact him. (App. Exh. 19, pp. 2-3.)

NEA-Alaska did in fact contact Harvey, interviewed him, and decided to hire Harvey as its Interim Assistant Executive Director. He began his employment in that position in March 1998. It is undisputed that the decision to hire Harvey was made by

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

NEA-Alaska: NEA-Alaska was free to hire whomever it chose, and NEA did not direct NEA-Alaska to hire Harvey, or otherwise attempt to influence NEA-Alaska's decision. (Marshall Decl. ¶ 4; App. Exh. 46, p. 9.)

Other than a stipend to cover the difference in the cost of living between Alaska and Mississippi, NEA-Alaska did not pay Harvey a salary; instead, he continued to receive his salary pursuant to the severance agreement with MAE. (App. Exh. 17, pp. 5-6.)

While he was employed as Interim Assistant Executive Director, Harvey's immediate supervisor was NEA-Alaska's Executive Director, Vernon Marshall, and Harvey reported to him. Harvey and Marshall both understood that NEA-Alaska had the sole authority to direct Harvey's work as Interim Assistant Executive Director, to supervise him, to discipline him if necessary, and to determine how long he would be retained. (Harvey Decl. ¶¶ 4-5; Marshall Decl. ¶¶ 6-7.) Both Harvey and Marshall also understood that NEA had no authority with regard to any of these matters while Harvey was working in Alaska. (Harvey Decl. ¶ 5; Marshall Decl. ¶ 7; *see also* Orrange Decl. ¶ 10.)

Harvey originally was hired by NEA-Alaska to serve as Interim Assistant Executive Director only until December 1998, at which time it was expected that the Assistant Executive Director would return from her leave. (App. Exh. 17, pp. 9-11.) She accepted another position, however, and NEA-Alaska decided to retain Harvey as Interim Assistant Executive Director until a permanent Assistant Executive Director was hired. (*Id.*, pp. 7-9.) Vernon Marshall "look[ed] around" and encouraged other qualified candidates to apply for

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

Memorandum of Law in Support of Renewed Motion of
Defendant National Education Association for Summary Judgment
Page 12 of 34

the permanent position, (App. Exh. 17, p. 8), but ultimately Marshall chose Harvey for the position, and Harvey became NEA-Alaska's permanent Assistant Executive Director in September 1999. (Marshall Decl. ¶ 5.)  NEA was not involved in that decision.  (*Id.*)

Under the February 17, 1998 severance agreement, MAE's obligation to pay Harvey's salary ended on August 31, 1999, which coincided with his last day as NEA-Alaska's Interim Assistant Executive Director.  Accordingly, when Harvey became NEA-Alaska's Assistant Executive Director on September 1, 1999, his participation in the USEDP ended; from that point on, Harvey was no longer an NEA employee for any purpose, and he received his salary and benefits directly from NEA-Alaska.  (App. Exh. 20, pp. 2-3.)

**D.    The Relationship of the Plaintiff-Intervenors to NEA-Alaska and NEA**

Each of the intervenors was hired by NEA-Alaska before Harvey became Interim Assistant Executive Director.  When initially hired, Bhend and Christopher were supervised by Karla Feeley, NEA-Alaska's Assistant Executive Director, and Chamara was supervised by Office Manager Darcy Carney.  (App. Exh. 6, p. 2; App. Exh. 8, p. 8; App. Exh. 9, p. 2; App. Exh. 10, p. 9.)  After Harvey was hired as Interim Assistant Executive Director of NEA-Alaska, he became the immediate supervisor for each of the intervenors.

In their employment with NEA-Alaska, the intervenors were represented by a union known as the National Staff Organization-Alaska, which had a collective bargaining agreement with NEA-Alaska (not with NEA).  (Exh. 3 to NEA-Alaska's Motion for Summary Judgment:  Claims Brought Under Title VII and AS 18.80.)  The agreement

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

included a grievance arbitration procedure under which all management authority with respect to resolving grievances rested with NEA-Alaska, not with NEA. (Exhs. 4-5 to NEA-Alaska's Motion for Summary Judgement: Claims Brought Under Title VII and AS 18.80.)

## E.    The EEOC Charges and the Conciliation Process

In April 2000, each of the intervenors filed a charge with the EEOC, alleging that NEA-Alaska had discriminated against them in violation of Title VII. NEA was not named as a respondent in the charges, and the charges did not refer to any conduct by NEA. (App. Exh. 37, pp. 1-3; App. Exh. 39, pp. 1-5; App. Exh. 43, p. 1.)

On August 10, 2000, the EEOC issued findings of probable cause to believe that the April 2000 charges against NEA-Alaska had merit.[6] (App. Exh. 36, pp. 1-2; App. Exh. 38, pp. 1-2; App. Exh. 42, pp. 1-2.) No findings of probable cause were ever issued with respect to NEA. NEA-Alaska's attorney wrote to the EEOC in August 2000 "on behalf of NEA-Alaska to accept [the Commission's] invitation to participate in conciliation in hopes of resolving all . . . matters." (Exh. 3 to Plaintiffs' Opposition to NEA-Alaska's Motion for Summary Judgment: Failure to Conciliate.) In the ensuing conciliation process, the EEOC met only with NEA-Alaska's attorney and NEA-Alaska's business manager, and did not meet with any representatives of NEA. (Declarations of Carmen Flores and Judith Cotner

---

[6] Chamara filed an additional charge against NEA-Alaska in September 2000. (App. Exh. 41.) On November 27, 2000, the EEOC dismissed that charge and issued a right to sue letter. (App. Exh. 40, pp. 1-2.)

Memorandum of Law in Support of Renewed Motion of
Defendant National Education Association for Summary Judgment
Page 14 of 34

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

in Support of Plaintiffs' Opposition to NEA-Alaska's Motion for Summary Judgment:
Failure to Conciliate.)

## ARGUMENT

### A.    Standards for Summary Judgment

To survive a motion for summary judgment, plaintiffs must produce "enough
evidence to permit a trier of fact to infer [each] fact" that is necessary to support their case.
*Messick v. Horizon Indus., Inc.*, 62 F.3d 1227, 1229 (9th Cir. 1995). Although the court
must draw "all *reasonable* inferences supported by the evidence in favor of the non-
moving party," *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)
(emphasis added), summary judgment is to be denied only if the record is sufficient "[to]
lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co.
v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). *See also Rivera v. Phillip Morris, Inc.*,
395 F.3d 1142, 1146 (9th Cir. 2005) ("A mere scintilla of evidence supporting the non-
moving party's position is insufficient; there must be evidence on which a jury could
reasonably find for the nonmoving party"); *Bahrampour v. Lampert*, 356 F.3d 969, 974
(9th Cir. 2005) ("A mere scintilla of evidence will not be sufficient to defeat a properly
supported motion for summary judgment . . .. Summary judgment may be granted if the
evidence is merely colorable . . . or is not significantly probative") (quoting *Summers v. A.
Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997)); *Alaska Center for the
Environment v. West*, 31 F. Supp. 2d 714, 720 (D. Ak. 1998) ("A 'scintilla' of evidence is
insufficient to create a factual dispute for purposes of summary judgment").

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

**B.    NEA Cannot be Held Liable Under Title VII Because NEA is Not the Intervenors' Employer and NEA Did Not Have Control Over the Conduct at Issue**

It is undisputed that the intervenors, who are the alleged victims of the conduct at issue in this case, were not employed by NEA. Under Title VII, the duty to provide employees with a workplace free from sexual harassment, whether by supervisors, outside contractors or others, rests with the employer of the employees who claim to have been harassed – in this case, with NEA-Alaska. *See, e.g.*, *Dunn v. Washington County Hospital*, 2005 U.S. App. LEXIS 24660 (7th Cir. Nov. 17, 2005) (where the head of emergency services at a hospital harassed nurses, the hospital, as the nurses' employer, would be liable under Title VII for failing to take adequate steps to protect the nurses even if the harasser was found to be an independent contractor rather than an employee of the hospital).[7]

Conversely, as a general matter, under Title VII a defendant is "not liable for discrimination [if it] was not the Plaintiffs' employer." *Anderson v. Pacific Mar. Ass'n*, 336 F.3d 924, 926 (9th Cir. 2003). As we will show, the narrow exception to that rule, which comes into play where a defendant has discriminatorily "interfer[ed] with [the plaintiffs'] employment opportunities with another employer," *Association of Mexican-Am. Educators v. California*, 231 F.3d 572, 580 (9th Cir. 2000) ("*AMAE*"), is not applicable in this case.

---

[7] Of course, the employer's liability is subject to the defenses discussed in *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. Baca Raton*, 524 U.S. 775 (1998). *See infra* note.

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

Memorandum of Law in Support of Renewed Motion of
Defendant National Education Association for Summary Judgment
Page 16 of 34

1.     In *AMAE*, the plaintiffs challenged as discriminatory the California Basic Education Skills Test ("CBEST"), "which is a prerequisite to employment in a variety of positions in the California public schools." *Id.* at 577. Although the plaintiffs were employed by (or sought to be employed by) various school districts, and not by the State of California, they sued the state, because the state was responsible for "requiring, implementing, and administering the CBEST." *Id.* at 581.

The Ninth Circuit held that in the absence of any direct employment relationship between the plaintiffs and the state, the state could be answerable under Title VII only if it had "interfer[ed] with [the plaintiffs'] employment opportunities with another employer." *Id.* at 580 (quoting *Gomez v. Alexian Bros. Hosp.*, 698 F.2d 1019, 1021 (9th Cir. 1983); *Lutcher v. Musicians Union Local 47*, 633 F.2d 880, 883 n.3 (9th Cir. 1980)). The Court held that the state's role in "requiring, implementing and administering the CBEST" constituted such "interfere[nce]," because of "the peculiar degree of control that the State of California exercises over local school districts." *AMAE*, 231 F.3d at 581. The Court found that "the State of California is in a theoretical *and* practical position to 'interfere' with the employment decisions of local school districts" because the state's control over the districts is "plenary." *Id.* at 582 (emphasis by the Court). *See also id.* ("California's public schools . . . are under the state's control in almost every aspect of their operations".)

The Court emphasized in *AMAE* that the state's "control" and "interference" had been exercised *to mandate the very acts that the plaintiffs alleged were discriminatory*.

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

Memorandum of Law in Support of Renewed Motion of
Defendant National Education Association for Summary Judgment
Page 17 of 34

"[T]he state dictates whom the districts may and may not hire," *id.*, and the state dictated

that no candidate could be hired who had not passed the CBEST. Because the

discriminatory conduct of which the plaintiffs complained had been dictated solely by the

state, not by the individual school districts that were the direct employers of teachers, to

exempt the state from liability would create a "loophole[ ] in Title VII's coverage." *Id.* at

581.

Thus, *AMAE* allows Title VII liability to be imposed on an entity that is not the

plaintiffs' employer in very limited circumstances – specifically, where the decision to

engage in the conduct alleged to be discriminatory has been made not by the plaintiffs'

employer, but by that other entity.[8]

The limits of that doctrine were emphasized by the Ninth Circuit in *Anderson*, where

the Court held that PMA, an association of stevedoring and shipping companies, "could not

be liable for discrimination [against employees of the member companies] because PMA

was not the Plaintiffs' employer." *Anderson,* 336 F.3d at 926. In *Anderson*, as in this case,

the alleged discrimination consisted of harassment that allegedly created a "hostile work

---

[8] That was the case not only in *AMAE*, but in the earlier decisions cited by the Court in *AMAE*.
Thus, in *Gomez*, the plaintiff's employer had submitted a contract proposal to a hospital under
which the plaintiff, an Hispanic doctor, would have served as director of the hospital's emergency
room; but the hospital (which was not the plaintiff's employer) rejected the contract because it did
not want "too many brown faces." *Gomez*, 698 F.2d at 1020. Similarly in *Sibley Memorial
Hospital v. Wilson*, 488 F.2d 1338 (D.C. Cir. 1973), the complaint of the plaintiff (a male nurse)
was that the staff of the defendant hospital, which was not his employer, had refused to allow him
to report to patients who had requested a nurse. *Id.* at 1339-40. *See Anderson*, 336 F.3d at 931
(explaining that *Gomez* and *Sibley* turned on those facts).

Memorandum of Law in Support of Renewed Motion of
Defendant National Education Association for Summary Judgment
Page 18 of 34

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

environment." *Id.* In arguing that PMA could be held liable for the harassment to which they had been subjected, the

plaintiff longshoremen pointed out that PMA had been granted "the authority to establish and negotiate labor contracts and policies" for its member companies, and that PMA had been given "the general responsibility for ensuring that member-employers comply with the terms of the [collective bargaining agreement]." *Id.* Indeed, the agreement provided that copies of all discrimination grievances were to be provided to PMA, which was authorized to mediate such disputes. *Id.* at 927.

The Court held nonetheless that PMA could not be held liable for the harassment of the longshoremen (discrimination that the Court described as "horrific and pervasive," *id.* at 926), because PMA did not supervise the longshoremen and had no power to discipline those who engaged in harassment. *Id.* at 927, 931-32. Noting that the Court in *AMAE* had "emphasized" the "peculiar degree of control that [California] exercises over local school districts," *id.* at 931, the *Anderson* Court held that where a defendant is not the plaintiff's direct employer, "Ninth Circuit [precedents] condone liability [only] when there exists discriminatory 'interference' by the indirect employer and where the indirect employer had some peculiar control over the employee's relationship with the direct employer." *Id.* at 932. Applying that test, the Court held that PMA could not be held liable because "[the power] to take corrective measures to stop the harassment . . . belonged to [PMA's] member-employers," not to PMA itself. *Id.*

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

Memorandum of Law in Support of Renewed Motion of
Defendant National Education Association for Summary Judgment
Page 19 of 34

This is a much easier case than *Anderson*. Unlike PMA, which had substantial authority over the negotiation and enforcement of labor agreements and policies applicable to the longshoremen, NEA had no control whatsoever – much less a "peculiar degree of control," *id.* at 931 – over NEA-Alaska's employment practices with respect to the intervenors. *See supra* at 3-11. And, unlike PMA, NEA placed no role in the grievance process by which the intervenors and other employees of NEA-Alaska could challenge how they were treated on the job. *See supra* at 12. Given NEA's lack of control over the NEA-Alaska work place, under *Anderson* NEA cannot be found liable for the alleged harassment of NEA-Alaska employees.[9]

---

[9] Where, as in this case, a plaintiff's claim concerns harassment by a supervisor, it is particularly appropriate to require a showing of a "peculiar degree of control" before liability may be imposed on an entity that is not the plaintiff's employer. By their nature, acts of harassment may not automatically be attributed to any party other than the supervisor who perpetrated the act, and for that reason the Supreme Court has held that even the *employer* is not automatically liable for a supervisor's harassing conduct. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. Boca Raton*, 524 U.S. 775 (1998). The Court has explained that the strongest rationale for holding an employer liable for harassment by a supervisor is that the supervisor's power to harass employees derives from the fact that the supervisor is "clothed with the employer's authority." *Ellerth*, 524 U.S. at 763 (quoting *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 77 (1986) (Marshall, J., concurring in judgment)). In this case, Tom Harvey was "clothed with the . . . authority" of NEA-Alaska, not of NEA; Harvey's authority over the intervenors stemmed from his power to act on behalf of their employer, NEA-Alaska, *not* from any power to act on behalf of NEA.

Furthermore, the *Ellerth* and *Faragher* Courts held that an employer may avoid liability for a supervisor's harassment by showing that the employer took reasonable steps to prevent or correct the harassing behavior. *Ellerth*, 524 U.S. at 745; *Faragher*, 524 U.S. at 807. The Court explained that if such a defense were not available, "a theory of vicarious liability for misuse of supervisory power would be at odds with the statutory policy." *Faragher*, 524 U.S. at 806. In this case, however, only NEA-Alaska, not NEA, was in a position to know what was happening in the NEA-Alaska workplace, and – even more to the point – only NEA-Alaska, not NEA, had the authority to take any requisite corrective action. Under the reasoning of *Ellerth* and *Faragher*, it would be "at odds with the statutory policy" to hold NEA liable for any harassing behavior on the part of Tom Harvey, where NEA was in no position to control or correct such behavior.

Memorandum of Law in Support of Renewed Motion of
Defendant National Education Association for Summary Judgment
Page 20 of 34

2.    In responding to NEA's earlier motion for summary judgment, plaintiffs advanced two theories as to why, in their view, NEA possessed sufficient control over the intervenors' employment to be subject to suit under *AMAE* and *Anderson*. Plaintiffs' first theory was that NEA had control over Harvey's conduct toward the intervenors by virtue of NEA's relationship with Harvey through the USEDP. Plaintiffs' other theory was that NEA should be held liable because it was responsible for "placing" Harvey with NEA-Alaska. As we demonstrate below, each of these theories is without merit even when judged on its own terms.

However, both of plaintiffs' theories are beside the point in any event. All three intervenors testified that the conduct that is the subject of their EEOC charges, and for which they are seeking relief, occurred after Harvey had become NEA-Alaska's *permanent* Assistant Executive Director. As Carol Christopher put it, "my perception is [Harvey] changed when he got the job permanently." (App. Exh. 10, p.11.) Carmela Chamara stated in her EEOC Intake Questionnaire that the harm she allegedly suffered from Harvey's behavior had been "continuous since September 1999" (App. Exh. 26, p.4; App. Exh. 9, p. 3) – which is when Harvey became *permanent* Assistant Executive Director. And Julie Bhend testified that as of the spring of 1999, Harvey had not been harassing her, and that his behavior did not "really negatively impact[ ]" her until November 1999. (App. Exh. 7, pp. 9-12.)

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

Memorandum of Law in Support of Renewed Motion of
Defendant National Education Association for Summary Judgment
Page 21 of 34

It is undisputed that NEA played no role in NEA-Alaska's decision to make Harvey its permanent Assistant Executive Director, and that Harvey ceased at that point to participate in the USEDP or to have any relationship with NEA. *See supra* at 11. Consequently, even if there were any legal merit to plaintiffs' contentions that NEA should be considered responsible for Harvey's conduct as *Interim* Assistant Executive Director, there still would be no basis for holding NEA responsible for *the conduct at issue* in this case, which occurred after Harvey had become a permanent employee of NEA-Alaska.

3.     In any event, even if the conduct for which plaintiffs are seeking relief had occurred while Harvey was serving as *Interim* Assistant Executive Director, the two theories that plaintiffs advance in an effort to hold NEA responsible for Harvey's conduct while in that position are without merit as a matter of law.

a.     Plaintiffs have argued that by virtue of NEA's relationship with Harvey through the USEDP, NEA had control over Harvey's conduct toward the intervenors while Harvey was participating in the USEDP. The uncontroverted evidence belies that contention.

Plaintiffs have made much of the fact that the USEDP Guidelines identify individuals who are being paid through the USEDP as "employees" of NEA. But the use of that label does not even begin to answer the question whether NEA's relationship with Harvey while he was in the USEDP was such as would potentially render NEA liable for Harvey's treatment of NEA-Alaska's employees. As the EEOC itself has said, in

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

Memorandum of Law in Support of Renewed Motion of
Defendant National Education Association for Summary Judgment
Page 22 of 34

determining whether an entity's relationship with an individual is of such a nature as to render the entity responsible under Title VII, "[t]he label used to describe the worker in the employment contract is not determinative." Enforcement Guidance: Application of EEO Laws to Contingent Workers Placed by Temporary Employment Agencies and Other Staffing Firms, EEOC Notice No. 915.002 at 6 (December 3, 1997) (Available at http://www.eeoc.gov/policy/docs/conting. html, last viewed November 22, 2005). *See, e.g., Atchley v. Nordam Group, Inc.*, 180 F.3d 1143, 1153 (10th Cir. 1999) (company that supplied workers to another company was not responsible for discrimination the plaintiff experienced on the job, despite the fact that "[the defendant company] paid [the plaintiff], and . . . testified at trial it was her employer").

As we have noted, USEDP participants are designated as NEA "employees" in order to qualify them for participation in certain benefit programs for which NEA "employees" are eligible. *See supra* at 8. This does not mean, however, that NEA has any control over the day-to-day activities of a participant in the USEDP. On the contrary, the Guidelines unequivocally provide that such control rests solely with the state affiliate, not with NEA. *Id.*

Thus, there is nothing in the Guidelines that would give NEA the authority to dictate how a USEDP participant who is working for a state affiliate should treat employees of that affiliate, or to intervene if it is alleged that the USEDP participant is mistreating those

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

employees.[10] At most, the USEDP Guidelines give NEA a limited role with respect to the

training and evaluation of USEDP Executive Directors, while giving NEA no authority

whatsoever to control the day-to-day conduct of a USEDP participant in his dealings with

state affiliate employees.[11] This hardly constitutes the "peculiar degree of control" that can

render an entity liable under Title VII for discrimination against individuals who are not its

employees. *See generally North Am. Van Lines, Inc. v. NLRB*, 869 F.2d 596, 599 (D.C.

Cir. 1989) (contrasting "control over the means and manner of performance," which is the

hallmark of an employer-employee relationship, with "efforts to monitor, evaluate, and

improve the results or ends of [a] worker's performance," which are commonly undertaken

---

[10] The Guidelines do not give NEA authority to discipline a USEDP participant. (Orrange Decl. ¶ 9; Orrange Decl. Exh. B.) And the Guidelines provide that the decision whether a USEDP Executive Director should be terminated for cause is to be made by the state affiliate. (Orrange Decl. Exh. B, p. 10) ("The SA may terminate the USEDP Executive Director's employment at any time, without advance notice, for cause.") *See also* App. Exh. 49, p. 8 ("[t]he hiring and retention of [USEDP] Executive Directors is at the prerogative of the state affiliate); App. Exh. 51, p. 3 (whether a USEDP Executive Director will remain in his or her position is "a state affiliate decision"); App. Exh. 47, pp. 3-5 (state affiliate determines whether a USEDP Executive Director has satisfactorily completed his or her probationary period).

[11] The Guidelines provide that at NEA's request, a USEDP Executive Director shall attend "a reasonable number of training sessions, workshops, and/or other meetings designed to improve his or her effectiveness as the USEDP Executive Director;" and, although the Guidelines are explicit that "*the SA* . . . shall evaluate the USEDP Executive Director's performance," the Guidelines state that the SA is to do this "in consultation with the NEA Executive Director." (Orrange Decl. Exh. B, p. 9). In practice, evaluations of USEDP Executive Directors are handled entirely by the state affiliates, without any consultation with NEA. (App. Exh. 46, pp. 5-6, 10; App. Exh. 47, p. 6; App. Exh. 49, pp. 3-4, 7-8.)

NEA's role under the USEDP Guidelines in the initial selection of a state Executive Director also is narrowly circumscribed. The Guidelines provide that a state affiliate may place its incumbent Executive Director in the USEDP "[i]f NEA gives approval." (Orrange Decl. Exh. B, p. 5.) Otherwise, "NEA and the SA shall jointly develop a list of persons that they consider qualified to serve as the USEDP Executive Director," and "*the SA* shall select from this list the person that it wishes to have serve as the USEDP Executive Director." *Id.* (emphasis added). In practice, NEA has left the selection of USEDP Executive Directors entirely to the state affiliates. (App. Exh. 51, p. 2.)

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

Memorandum of Law in Support of Renewed Motion of
Defendant National Education Association for Summary Judgment
Page 24 of 34

where no agency relationship exists, such as where the worker is an independent contractor).[12]

Plaintiffs' effort to press the USEDP Guidelines into service as a predicate for NEA liability is in any event an exercise in futility. No amount of parsing of the Guidelines can alter the undisputed fact that NEA and its state affiliates have never understood NEA to have any authority to supervise, direct or discipline a USEDP participant who is working for a state affiliate. This is confirmed not only by the uncontroverted testimony of all knowledgeable witnesses,[13] but by the fact that NEA *never* has directed, supervised or

---

[12] Indeed, NEA's lack of control over Harvey's performance of his job for NEA-Alaska was such that Harvey cannot even properly be considered to have been NEA's agent. *See, e.g.*, Restatement (Second) of Agency § 1(1) (agency relation exists only where agent acts "subject to [the principal's] control)"; *NLRB v. Sheet Metal Workers Int'l Ass'n*, 154 F.3d 137, 143 (3d Cir. 1998) (applying Restatement test under National Labor Relations Act); *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 996 (6th Cir. 1997) (applying Restatement test under employment discrimination statutes); *Servis v. Hiller Sys. Inc.*, 54 F.3d 203, 207 (4th Cir. 1995) (applying Restatement test in admiralty case). In particular, for an employer-employee relationship to exist for purposes of attributing the employee's misconduct to the employer, the employer must have "the right to direct the way in which [the work] shall be done." *Jones v. Century Oil U.S.A., Inc.*, 957 F.2d 84, 86 (3d Cir. 1992). *See* Restatement (Second) of Agency § 2(2) (for purposes of attributing liability to an employer, a "servant" is one "whose physical conduct in the performance of the service is controlled or is subject to the right of control by the master").

[13] *See* testimony cited *supra* at 6-8. In addition, the President of the intervenors' national staff union, Charles Agerstrand, testified – on the basis of his many years of experience in representing employees in disputes with NEA and with various state and local affiliates – that NEA has no authority to require an affiliate to take any action regarding the affiliate's employees. (App. Exh. 4, pp. 7-9.) Consistent with that fact, when Agerstrand spoke with NEA officials about his concerns regarding the friction between Tom Harvey and certain employees of NEA-Alaska (*see id.*, pp. 3-4), he did *not* ask the NEA officials to take any action with respect to the matter, because:

I see Alaska as I see all of the states that are affiliated with NEA: independent bodies separate and distinct from the NEA and therefore, anything affecting the

employees within those states, practically speaking, is under the jurisdiction of that particular employer.

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

Memorandum of Law in Support of Renewed Motion of
Defendant National Education Association for Summary Judgment
Page 25 of 34

disciplined any participant in the USEDP, in any state, for any reason. *See supra* at 5, 9. Rather, that is entirely the province of the state affiliates.

Plainly, NEA was *not* "in a . . . practical position to 'interfere' with the employment decisions of [the plaintiffs' employer]." *AMAE*, 231 F.3d at 582. In his actions with respect to the intervenors, Tom Harvey was acting on behalf of, and was subject to the control of, NEA-Alaska, *not* NEA.

The Ninth Circuit's decision in *Wrighten v. Metropolitan Hospitals, Inc.*, 726 F.2d 1346 (9th Cir. 1984), is instructive in this regard. The individual who had committed the allegedly discriminatory acts in that case, Roger Larson, was the president of a hospital, and was employed by a company named Metro which provided services to the hospital. *Id.* at 1350-52. The Ninth Circuit affirmed the entry of summary judgment dismissing Metro as a defendant, because Larson had "acted as president of [the hospital] during the incidents at issue," and "ultimate control over the personnel policies and practices of the hospital remained with the [hospital] board." *Id.* at 1252. So too here. In supervising the intervenors, Harvey did not act in the capacity of a representative of NEA, but rather in the capacity of Assistant Executive Director of NEA-Alaska. And "ultimate control over the personnel policies and practices [applicable to NEA-Alaska employees, including the intervenors] remained with the [NEA-Alaska] board." *See supra* at 4-5, 10-11.

---

(*Id.*, p. 8.)

Memorandum of Law in Support of Renewed Motion of
Defendant National Education Association for Summary Judgment
Page 26 of 34

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

Finally, this case is worlds away from the situation in *AMAE*, where the alleged discrimination had been dictated by the state and the employing school districts had no choice but to comply with the state's directives. In that situation, the employer had done nothing wrong and could not be held liable; the discriminatees therefore would be without a remedy if the state could not be held responsible. Here, in contrast, NEA-Alaska has freely acknowledged that it, not NEA, is responsible for Harvey's conduct. It creates no "loophole[ ] in Title VII's coverage," *AMAE*, 231 F.3d at 581, to recognize that plaintiffs' claims may be asserted only against NEA-Alaska, not against NEA.[14]

  b.  Plaintiffs' other theory – *i.e.*, that NEA should be held liable for Harvey's conduct while serving as NEA-Alaska's Interim Assistant Executive Director because it was responsible for "placing" him in that position – is untenable. The undisputed evidence establishes that NEA did not direct NEA-Alaska to make Harvey its Interim Assistant Executive Director. Rather, the extent of NEA's involvement was simply that NEA Regional Director Nelson Okino, when asked by NEA-Alaska's Executive Director

---

[14] It bears noting in this connection that to make a national labor organization like NEA liable for the acts of officers and managers of state and local affiliates "could alter the delicate balance between local unions and their internationals, to the sacrifice of local union independence." *Brenner v. Local 514, United Bhd. of Carpenters*, 927 F.2d 1283, 1292 (3d Cir. 1991). The NEA-Alaska membership has the power, through its elected Board, to direct the NEA-Alaska staff. *See supra* at 4-5. That is an important right of the NEA-Alaska membership. Many of the allegations made by the intervenors in this case, as well as the relief they are seeking, involve matters that directly affect the NEA-Alaska membership, and as to which only NEA-Alaska, not NEA, has the power to act. For example, intervenor Bhend seeks a reduction in her workload, and pay for overtime she alleges to have worked. (App. Exh. 27, p. 6.) Intervenor Christopher also complains about her workload. (App. Exh. 3, p. 5.) Indeed, *every* incident in which Tom Harvey allegedly yelled at or criticized the intervenors involved work they were performing (or should have been performing) on behalf of the NEA-Alaska membership. To suggest that *NEA* should have injected itself into these matters would be to deprive the NEA-Alaska membership of its right to have these matters controlled by the elected leadership of *NEA-Alaska*.

Memorandum of Law in Support of Renewed Motion of
Defendant National Education Association for Summary Judgment
Page 27 of 34

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

whether Okino was aware of any individuals who might be interested in the interim position, mentioned Harvey as a possible candidate to contact. *See supra* at 9-10.  NEA did not in any other way participate in or attempt to influence the hiring process.[15]

Moreover, even if NEA had indeed "placed" Harvey with NEA-Alaska, that act alone, where it is not accompanied by any authority to control the subsequent actions of the person so "placed," would not amount to the "peculiar degree of control" that, under *AMAE* and *Anderson*, must be shown before an entity may be held liable for discrimination against individuals who are not its employees. *See supra* at 14-17.

For these reasons, NEA is not responsible under Title VII for the conduct alleged in this case, and NEA therefore is entitled to summary judgment on the merits.

---

[15] The separation agreement executed by Harvey and the Mississippi Association of Educators contained a provision stating that, "[u]pon his departure from MAE, Tom Harvey's assignments under the USEDP Program will be directed by NEA, but they will no longer include any assignment in the state of Mississippi." (App. Exh. 34, p. 3.)  That provision did *not* mean that NEA could *compel* some other state affiliate to use Harvey as a manager; after all, MAE and Harvey had no ability to invest NEA with such authority over other state affiliates.  Nor did the agreement purport to dictate that, if Harvey were to work for a state affiliate during the term of the separation agreement, his day-to-day activities would be supervised by NEA rather than by the state affiliate.  Again, MAE and Harvey had no ability to invest NEA with such authority – nor is there any reason why MAE would have cared whether Harvey's work at some other state affiliate would be supervised by NEA or by that affiliate.  On both of these points, the separation agreement does not create any disputed issue of material fact:  the evidence is undisputed that NEA did *not* require NEA-Alaska to employ Harvey, and that NEA did *not* have authority to direct or supervise his daily activities at NEA-Alaska.  The most that could possibly be read into the provision of the Mississippi separation agreement that refers to NEA "direct[ing]" Harvey's "assignments under the USEDP Program" is that, as long as NEA continued to contribute toward Harvey's compensation, NEA could require Harvey to seek a position with a state affiliate.  That limited role would not come close to making NEA responsible under Title VII for Harvey's subsequent conduct over which NEA had no day-to-day control.  Cf. *Atchley*, 180 F.3d at 1153 (support services company that supplied an employee to a manufacturer was not the employee's "employer" for Title VII purposes because it did not control the employee's day-to-day activities).

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

**C.    NEA is Entitled to Summary Judgment Because It Was Not Named in the Intervenors' EEOC Charges**

Although NEA is entitled to summary judgment on the merits, the Court properly could grant summary judgment to NEA without reaching the merits, because no EEOC charge was ever filed against NEA.

Title VII expressly provides that a plaintiff, whether it be the EEOC or a private party, may only bring an action against a respondent who was "named in the charge" filed with the Commission. 42 U.S.C. § 2000e-5(f). It is undisputed that the intervenors named only NEA-Alaska, not NEA, in their charges;[16] and they did so despite their awareness that Tom Harvey was receiving his compensation through NEA, and their belief that NEA had "put [him]" at NEA-Alaska. *See* App. Exh. 44, p. 2 (intervenor Bhend's testimony that, from the time Harvey arrived in Alaska, she "believed he was put there and paid by NEA"); App. Exh. 45, p. 2 (testimony of Jeffrey Cloutier, then-president of the NEA-Alaska staff union of which the intervenors were members, that, at the time Harvey first arrived, Cloutier understood him to be an "NEA staff person" who was "on loan to NEA-Alaska" and was "receiving salary and other benefits from the NEA").

The intervenors' failure to name NEA in their charges is fatal to their claims. A national union and its affiliates are separate entities, and filing a charge against an affiliate

---

[16] This is not a situation such as was presented in *Kaplan v. International Alliance of Theatrical & Stage Employees*, 525 F.2d 1354, 1359 (9th Cir. 1975) and *Atonio v. Wards Cove Packing Co.*, 703 F.2d 329, 330 (9th Cir. 1982), where the language in the charge identifying the respondent was unclear and could be interpreted to refer to the party that subsequently was sued. The charges here referred explicitly to *NEA-Alaska*, and there has been no contention that that term was understood by anyone to refer to the national NEA.

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

Memorandum of Law in Support of Renewed Motion of
Defendant National Education Association for Summary Judgment
Page 29 of 34

does not satisfy the requirement of filing a charge against the national organization. *See Stache v. International Union of Bricklayers*, 852 F.2d 1231, 1234 (9th Cir. 1988). *See also Schellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 126 (7th Cir. 1989) (filing charge against subsidiary did not satisfy charge-filing requirement as to parent corporation).

As the Ninth Circuit noted in this case (albeit without resolving the issue), where a defendant was directly involved in the conduct alleged as discriminatory in an EEOC charge and the defendant "should have anticipated" being named in a Title VII suit, "the court has jurisdiction over th[at] defendant[ ] even though [it was] not named in the EEOC charge." *EEOC v. NEA-Alaska*, 422 F.3d at 847, quoting *Sosa v. Hiroaka*, 920 F.2d 1451, 1458-59 (9th Cir. 1990). On that rationale, in *Sosa*, where the EEOC charge alleged that the employee had been denied promotions

due to his national origin, the Court held that the administrators who had made the challenged promotional decisions could be included as defendants despite not having been named in the charge. *See id.* at 1459. In the other case cited by the Ninth Circuit in its recent opinion, the Court described *Sosa* as standing for the proposition that "[d]efendants not named in the EEOC complaint can be sued under Title VII where such individuals should have anticipated being named in the Title VII action arising from the complaint." *Ortez v. Washington County*, 88 F.3d 804, 808 (9th Cir. 1996), cited in *EEOC v. NEA-Alaska*, 422 F.3d at 847. In *Ortez*, as in *Sosa*, the defendants who had not been named in

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

Memorandum of Law in Support of Renewed Motion of
Defendant National Education Association for Summary Judgment
Page 30 of 34

the charge were the administrators who had committed the acts alleged. *See also Chung v. Pomona Valley Cmty. Hosp.*, 667 F.2d 788, 792 (9th. Cir. 1982) (same).

The situation here is very different. NEA did not commit the acts of harassment alleged in the intervenors' EEOC charges; and NEA, which had no control over Harvey's actions in Alaska, had no reason to anticipate that the intervenors would seek to bring NEA into this litigation. The circumstances here are not comparable to *Sosa, Ortez* and *Chung*, where there was no doubt that the defendants named in the lawsuit were responsible for the acts that had been alleged in the EEOC charge. Rather, the circumstances here are comparable to *Stache*, in which the Ninth Circuit reversed a district court decision that had allowed suit to proceed against an international union that was not named in an EEOC charge filed against a local affiliate regarding an apprenticeship program. Even though the international union had the authority to prescribe rules for local affiliates' apprenticeship programs, and the international union had been aware of the charge but failed to take action when informed of the allegedly unlawful conduct of the local affiliate, the Ninth Circuit held that the charge did not sufficiently "allege[] facts implying that the [unnamed] defendant discriminated." *Stache,* 852 F.2d at 1234.

So too in *Schnellbaecher*, where an EEOC charge named only a subsidiary and not its parent corporation, the Seventh Circuit held that the parent could not be joined in the lawsuit, even though the parent "determines [the subsidiary's] personnel policies and both entities have the same attorneys, and thus [the parent] had notice of charges against [the

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

Memorandum of Law in Support of Renewed Motion of
Defendant National Education Association for Summary Judgment
Page 31 of 34

subsidiary]." *Schnellbaecher*, 887 F.2d at 125.  The court reasoned that, "[a]lthough [the

parent] had notice of the charges against [the subsidiary], it did not thereby have any notice

of any charges against *it*, nor did it have any opportunity to conciliate on its own behalf."

*Id.* at 127 (emphasis by the court).  *See also Carter v. Smith Food King*, 765 F.2d 916, 921

(9th Cir. 1985) (where a charge complained of discrimination by an employer, suit could not

be maintained against the plaintiff's union, where "[t]here is no indication or suggestion of

any kind in the charge filed by [plaintiff] that the union was in any way responsible for the

alleged discrimination, nor would there be any reason for the union, even if it had

discriminated against [plaintiff], to believe that the complaint referred to *its* acts of

discrimination") (interpreting California's Fair Employment and Housing Act, but applying

the same standard as applies in Title VII cases).

  In these circumstances, plaintiffs cannot treat the charges against NEA-Alaska as if

they were charges against NEA.  Plaintiffs therefore cannot proceed against NEA under

Title VI.

### CONCLUSION

  For the reasons stated in this memorandum, summary judgment should be entered in

favor of NEA.

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

Memorandum of Law in Support of Renewed Motion of
Defendant National Education Association for Summary Judgment
Page 32 of 34

Respectfully submitted this 9th day of December, 2005.

Attorneys for Defendant National
Education Association

BREDHOFF & KAISER, P.L.L.C.

By: _____
     JEREMIAH A. COLLINS
     JON BOURGAULT

By: _____
     DOUGLAS S. PARKER, ABA #8311168
     PRESTON GATES & ELLIS LLP

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

Memorandum of Law in Support of Renewed Motion of
Defendant National Education Association for Summary Judgment
Page 33 of 34

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of December, 2005 a copy of the foregoing was served by fax and Express Mail on the following:

> Carmen Flores
> Senior Trial Attorney
> Equal Employment Opportunity Commission
> 909 First Avenue, Suite 400
> Seattle, WA 98104-1061
>
> Terry A. Venneberg
> 625 Commerce Street, Suite 460
> Tacoma, WA 98402
>
> Kenneth Friedman
> Friedman, Rubin & White
> 1126 Highland Avenue
> Bremerton, WA 98337
>
> Leslie Longenbaugh
> Longenbaugh Law Firm, LLC
> 624 Main Street
> Juneau, AK 99801

Pamela McKibben, Legal Secretary

K:\49277\00001\DSP\DSP_P21H3

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

Memorandum of Law in Support of Renewed Motion of
Defendant National Education Association for Summary Judgment
Page 34 of 34