1  Kenneth R. Friedman
   FRIEDMAN, RUBIN & WHITE
2  1126 Highland Avenue
   Bremerton, WA 98337
3  Phone: 360-782-4300; Fax: 360-782-4358
   kfriedman@frwlaw.us
4
   Terry A. Venneberg
5  1126 Highland Avenue
   Bremerton, WA 98337
6  Phone: 360-377-3566; Fax: 360-377-4614
   tavlaw@qwest.net
7  Attorneys for Plaintiff-Intervenors

8  A. Luis Lucero, Jr., Regional Attorney
   Kathryn Olson, Supervisory Trial Attorney
9  Carmen Flores, Senior Trial Attorney
   EQUAL EMPLOYMENT OPPORTUNITY
10       COMMISSION
   909 First Avenue, Suite 400
11 Seattle, WA 98104
   Phone: 206-220-6893; Fax: (206) 220-6911
12 carmen.flores@eeoc.gov
   Attorneys for Plaintiff

13

14            IN THE UNITED STATES DISTRICT COURT

15               FOR THE DISTRICT OF ALASKA

16  EQUAL EMPLOYMENT            )
    OPPORTUNITY COMMISSION,     )
17                              )
                Plaintiff,      )
18                              )
          and                   )
19                              )
    CAROL CHRISTOPHER, JULIE    )
20  BHEND, and CARMELA CHAMARA, )
                                )      Case No. A01-0225CV (JKS)
21              Plaintiff-Intervenors,  )

22  OPPOSITION TO RENEWED MOTION OF DEFENDANT NATIONAL
    EDUCATION ASSOCIATION FOR SUMMARY JUDGMENT
    *EEOC, et al. v. NEA, et al.*
    Case No. A01-0225CV (JKS)
    Page 1 of 45

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358

1    vs.                                )
                                        )
2    NATIONAL EDUCATION                 )
     ASSOCIATION and NATIONAL           )
3    EDUCATION ASSOCIATION -            )
     ALASKA,                            )
4                                       )
             Defendants.                )
5    _____  )

6
7    ## OPPOSITION TO RENEWED MOTION OF DEFENDANT NATIONAL EDUCATION ASSOCIATION FOR SUMMARY JUDGMENT

8        In *EEOC v. National Education Association*, 422 F.3d 840 (9th Cir. 2005),

9    the Ninth Circuit reinstated claims brought by the EEOC and the

10   plaintiff-intervenors under Title VII against both NEA-Alaska and NEA. The court

11   held that genuine issues of material fact precluded summary judgment in favor of

12   defendants on the question of whether the actions of Tom Harvey were "because of

13   sex." The court noted that the case "illustrates an alternative motivational theory in

14   which an abusive bully takes advantage of a traditionally female workplace because

15   he is more comfortable when bullying women than when bullying men." *Id.* at 845.

16       As a part of the appeal to the Ninth Circuit, NEA sought to have the claims

17   against it dismissed on grounds other than those on which this court granted

18   summary judgment. NEA argued to the Ninth Circuit that "it is not a proper party

19   in this action because it was not named in the original EEOC charges." *Id.* at 847.

20   NEA also argued that "it 'cannot in any event be held responsible under Title VII

21   for the alleged harassment' because it did not exercise sufficient authority and

22   OPPOSITION TO RENEWED MOTION OF DEFENDANT NATIONAL
     EDUCATION ASSOCIATION FOR SUMMARY JUDGMENT
     *EEOC, et al. v. NEA, et al.*
     Case No. A01-0225CV (JKS)
     Page 2 of 45

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358

1   control over Harvey's conduct or the conditions of his employment." *Id.* The

2   Ninth Circuit held that both issues should be addressed on remand, but in doing so,

3   provided guidance to this court regarding the treatment of those issues. The court

4   noted that, "failure to name [a] party in the original charges is not dispositive" on

5   the question of whether the court would have jurisdiction over Title VII claims. *Id.*

6   The court also observed, concerning the responsibility of NEA for Harvey's

7   conduct, that, "These are *fact-intensive questions* that have not been addressed by

8   the district court and *as to which the record has not been fully developed.*" *Id.*

9   (emphasis added). Notwithstanding this guidance, NEA has now renewed its

10  summary judgment motion, arguing *on the same record presented to the Ninth*

11  *Circuit* – a record that, according to the Ninth Circuit, was not "fully developed"

12  enough justify judgment in favor of NEA as a matter of law – that summary

13  judgment is appropriate on both lack of jurisdiction and liability.

14       The "fact-intensive" questions presented by NEA's role in both assigning

15  Harvey to its Alaska affiliate, and employing him upon his arrival in Alaska, cannot

16  be resolved on summary judgment. Plaintiffs have presented evidence in this case

17  that the NEA was responsible for bringing Tom Harvey, the "abusive bully"

18  referred to by the Ninth Circuit, to its Alaska affiliate. The documents and

19  testimony clearly illustrate that Tom Harvey was "assigned" to NEA's Alaska

20  affiliate by the NEA. NEA's own documents and testimony show that Harvey was

21  an employee of NEA, both prior to and at the time of his assignment by NEA to

22  OPPOSITION TO RENEWED MOTION OF DEFENDANT NATIONAL
EDUCATION ASSOCIATION FOR SUMMARY JUDGMENT
*EEOC, et al. v. NEA, et al.*
Case No. A01-0225CV (JKS)
Page 3 of 45

Alaska, as well as during the first 18 months of his time as a supervisor at NEA-Alaska. Under the guidelines for the program in which Harvey participated as an Executive Director and was employed by NEA, the Unified State Executive Director Program ("USEDP"), NEA established standards and procedures for the retention, evaluation and termination of participants in the program, including Harvey. The evidence shows that NEA, through its management, was ***directly*** responsible for Harvey's assignment and placement in Alaska. The evidence also shows that, prior to Harvey's assignment to Alaska, NEA had both ***actual and constructive knowledge*** of Harvey's propensity for shouting, yelling and terrorizing women in the workplace. This evidence provides support for plaintiffs' claim that NEA violated Title VII by placing a known harasser of women – its own employee – in the NEA-Alaska workplace, thereby "interfering" in the employment relationship between plaintiff-intervenors and NEA-Alaska.

## I.    FACTS

Although NEA has included a lengthy "Statement of Facts" in its memorandum in support, many of the salient facts concerning the basis for its liability have been either omitted or briefly touched upon in its brief. In this opposition, plaintiffs will attempt to shed light on those facts, based on the evidence that has been uncovered concerning Mr. Harvey, his employment history and background, and his relationship to both NEA and NEA-Alaska. Plaintiffs have previously responded to NEA's original Motion for Summary Judgment, and have

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358

1   submitted exhibits in support of that opposition. This opposition to the renewed

2   motion will cite to, and incorporate by reference, the exhibits previously submitted

3   in opposing NEA's summary judgment motion (Exhibits 1 through 25 to

4   Opposition to Motion of Defendant National Education Association for Summary

5   Judgment [Docket No. 105]), as well as additional Exhibits 26 and 27 submitted

6   herewith.

7   **A.    Employment History and Background of Thomas Harvey**

8       As noted by NEA, Harvey began his work with NEA state affiliate

9   organizations in Maine in the mid-1980s. NEA Memo. in Support, p. 10. After

10  working in Maine, and in Texas from 1986 to 1992, Harvey was hired by the

11  Teachers Association of Baltimore County ("TABCO") as its Executive Director.

12  *Id.*    While at TABCO, Harvey supervised several female employees, including

13  Carole Jeffries and Linaya Yates-Lea.

14      Jeffries was a UniServ Director and Executive Assistant Director for

15  Communications at TABCO during the time that Harvey served as Executive

16  Director. *See* Exhibit 1, Second Depo. of C. Jeffries, p. 9. On multiple occasions,

17  Harvey pointed, yelled and acted in a physically threatening manner towards

18  Jeffries. *See* Exhibit 1, Second Depo. of C. Jeffries, pp. 227-240. One incident, as

19  described by Jeffries, was particularly chilling. Jeffries describes what happened

20  after she left a meeting involving the TABCO President, Edward Veit, and Harvey.

21      Q.    You left the room to take some medicine?

22  OPPOSITION TO RENEWED MOTION OF DEFENDANT NATIONAL
    EDUCATION ASSOCIATION FOR SUMMARY JUDGMENT
    *EEOC, et al. v. NEA, et al.*
    Case No. A01-0225CV (JKS)
    Page 5 of 45

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358

1    A.    Yes.

2    Q.    Okay.

3    A.    I went in the kitchen because we keep little bags of snacks or
4          whatever and usually I have to take something with the
          medication.

5    Q.    How far away was the kitchen?

6    A.    Twenty feet.

7    Q.    Okay. And what did you do when you got to the kitchen?

8    A.    Well, when I first got there, I just walked in and I thought, I
          was tired, and I just sat in the kitchen chair and leaned back
9          like that. And I didn't even realize anybody was in there when
          I first walked in. I just walked in and sat down. I thought let
10         me get myself together and decide, you know, what I'm going
          to do. And then because -- the two Kathys were there in there.
11         And I almost remembered the other one's last name. They
          heard all that yelling and screaming. Everybody in the office
12         can hear. Even when the doors were closed, everybody could
          hear it. They thought that I had been attacked. They knew
13         that, you know, things were not great and they thought that
          Tom had attacked me and they're coming over, what did he do
14         to you.

15   Q.    So the two Kathys were already in the kitchen --

16   A.    They were already in the kitchen.

17   Q.    -- when he got there?

18   A.    And they came -- they were approaching me. They hadn't
          even gotten to as far as where I was sitting and before they
19         could even get to where I was, Tom came flying in the room,
          which scared them. They both jumped back. And I didn't do
20         anything because I thought, what is this all about.

21   Q.    What did Mr. Harvey do when he entered the room?

22   OPPOSITION TO RENEWED MOTION OF DEFENDANT NATIONAL
    EDUCATION ASSOCIATION FOR SUMMARY JUDGMENT
    *EEOC, et al. v. NEA, et al.*
    Case No. A01-0225CV (JKS)
    Page 6 of 45

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358

1

2

3

A.    Tom walked directly over to me leaned across me, I'm leaning backwards -- that's the closest -- well, one of the closest times he's gotten to me, but I think that may have been the closest.

Q.    Were you standing?

4

5

6

7

8

A.    No.  I was lying back in the chair, like slouched back in the chair.  And he's this close to my nose and he's shaking his finger.  And I thought, I'm amazed he didn't touch me.  And he's screaming at me at the top of his lungs, spewing, you know, spit and whatever, screaming in my face, if you know what's good for you, you'll get your ass back in that room, meaning in the room.  And I said, that's when I said to him, how could you speak to me this way.

9

Q.    Let me just ask you, is that the way he said it to you?

10

11

A.    Yes.  He had kind of an impediment or something with his -- I don't know what, harelip or something, whatever, he wore a mustache to cover.

12

Q.    Did he have his voice raised?

13

A.    Yes.

14

Q.    Okay.  Can you --

15

16

A.    He was gritting his teeth as he was doing it, but it was -- it was loud and it was -- you know, I'm not -- I can't yell as loud as he.

17

18

Q.    Yeah.  I know you're having some difficulty with the voice, but could you approximate for us?

A.    How loud?

19

Q.    Yeah.

20

A.    I couldn't do that today.

21

22

1    Q.    But it was -- his voice was raised?

2    A.    Yes.

3    Q.    Was his face red?

4    A.    Oh, yes.

5    Q.    Okay.  And you showed your finger, you had it towards your face?

6
7    A.    His finger was pointing right at my nose, standing over me, yelling down at me.

8    Q.    Okay.

9    A.    I mean, I was in a vulnerable position.  I mean, I guess, I don't know, if I were a man, if I were stronger or didn't think he was crazy, I may have had a different reaction.

10

11    Q.    Okay.

12    A.    But I just --

13    Q.    And you --

14    A.    I couldn't believe it.  I think I was in total shock that he would even do that.

15
16    Q.    And he said something to the effect if you know what's good for you, you'll get your ass back in that room right now?

17    A.    That's what he said.

18    Q.    Okay.  Did he say anything else when he was in the kitchen, to you?

19
20    A.    When I asked him why he would do that and especially do that in front of witnesses, that's when he said, what witnesses, and he looked around like this and he goes, you get in that room now or you'll be insubordinate.  That's when he whispered.

21

22    OPPOSITION TO RENEWED MOTION OF DEFENDANT NATIONAL
EDUCATION ASSOCIATION FOR SUMMARY JUDGMENT
*EEOC, et al. v. NEA, et al.*
Case No. A01-0225CV (JKS)
Page 8 of 45

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358

Q.    Okay.

A.    And I went in there.

*See* Exhibit 1, Second Depo. of C. Jeffries, pp. 229-233.   Jeffries went on to describe other instances where Harvey had yelled in a violent and extreme fashion at her, putting his finger in her face while doing so.  *Id.* at pp. 235-240.   These incidents left Jeffries frightened, and in fear for her safety.  *Id.*

In response to this conduct and other actions taken against her by Harvey, Jeffries filed a grievance through her union, the Maryland State Teachers Association Professional Staff Organization ("MSTA PSO").   *See* Exhibit 2, Deposition Exh. 142.  In the grievance, which was directed to Harvey as TABCO Executive Director, Jeffries' representative noted the "hostile work environment" being encountered by Jeffries, and stated to Harvey that he had "attempted to engaged in overt intimidation of Ms. Jeffries by raising your voice and leaning across the table toward her in response to her questions regarding the lack of positives in your review of her work."  *Id.*  The letter also described the incident noted above, where Harvey had ordered "her back into a meeting by screaming 'If you know what's good for you, you'll get your ass back in there!'"  *Id.*  Ms. Jeffries also filed multiple EEOC complaints concerning Harvey.  *See* Exhibit 3.

Harvey also yelled, with his finger extended in her face, at Linaya Yates-Lea, who was a co-worker of Jeffries at TABCO.  *See* Exhibit 5, Depo. of

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358

L. Yates-Lea, p. 18.  He raised his voice to her during most of their interactions.  *Id.* at pp. 21-22.  Both Yates-Lea and Jeffries testified that the incidents of yelling and shouting by Harvey at TABCO caused their national union, the National Staff Organization ("NSO"), to impose sanctions on TABCO.  *See* Exhibit 5, Depo. of L. Yates-Lea, p. 37; Exhibit 1, Second Depo. of C. Jeffries, p. 245.  The sanctions served to discourage employees at other NEA affiliates from applying to work at TABCO.  *See* Exhibit 1, Second Depo. of C. Jeffries, pp. 251-252.  The sanctions imposed by the NSO were publicized in the organization's newsletter of June 1994, in an article that stated as follows:

### TABCO Employees Forced Out

NSO placed sanctions on the Teachers Association of Baltimore Co. (TABCO) for the actions of manager Tom Harvey.  "He has forced through harssment [sic], threats, abusive language, shouting and other modes of intimation [sic] the resignation of two female UniServ directors.

*See* Exhibit 6, Deposition Exhibit 148, p. 4.  This newsletter was distributed to the entirety of the NSO membership nationwide, which consisted in 1994 of approximately 4,370 NEA state affiliate employees.  *See* Exhibit 1, Second Depo. of C. Jeffries, p. 249; *see also* Exhibit 6 (Deposition Exhibit No. 148).

Harvey's penchant for engaging in extreme and abusive behavior towards women in work-related activities also was publicized concerning an incident involving an executive of a nurses' union in Baltimore.  During that incident, which involved a woman named Susan Orthaus (now Powell), Harvey, according to the

1   woman, "pressed his body against mine and pushed me up against the door." *See*

2   Exhibit 7, Depo. of S. Powell, p. 15. Harvey told her that "they [meaning TABCO]

3   were going to represent the nurses and that I needed to get that in my head." *Id.*

4   Criminal assault charges were filed against Harvey by the nurse. *Id.* at p. 17. The

5   incident was reported by the Baltimore Sun in a newspaper article, *see* Exhibit 8

6   (Deposition Exhibit 39), and was also reported on the local television news. *See*

7   Exhibit 9, Depo. of M. Ambrose, p. 81.

8       Following the publicity associated with his "harassment, threats, abusive

9   language, shouting," and other modes of intimidation against female employees at

10  TABCO, and the criminal charge lodged against him in Baltimore for assaulting a

11  female union executive, Harvey was retained by NEA to participate in the Unified

12  State Executive Director Program ("USEDP"). *See* Exhibit 10, Document NEA

13  0178. He became employed by NEA on September 1, 1994. *Id.* He remained an

14  employee of NEA from that date until August 31, 1999. *See* Exhibit 11,

15  Rule 30(b)(6) Deposition of National Education Association, pp. 48-49. Harvey's

16  first position while in the USEDP was as the Executive Director of the Mississippi

17  Association of Educators ("MAE"). Harvey served as MAE Executive Director

18  from 1994 until his dismissal in 1998.

19      During Harvey's time as Executive Director of the Mississippi affiliate, NEA

20  sent Larry Diebold, its then-Special Assistant to the Executive Director, to

21  Mississippi to work on the relationship between Harvey and the leadership there.

22  OPPOSITION TO RENEWED MOTION OF DEFENDANT NATIONAL
    EDUCATION ASSOCIATION FOR SUMMARY JUDGMENT
    *EEOC, et al. v. NEA, et al.*
    Case No. A01-0225CV (JKS)
    Page 11 of 45

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358

1    *See* Exhibit 12, Depo. of L. Diebold, p. 85.  "They didn't feel the relationship was

2    good enough to continue and wanted to know what their options might be in terms

3    of getting somebody else in there besides Mr. Harvey."  *Id.*, Depo. of L. Diebold,

4    p. 84.

5        Conflicting testimony has been offered concerning why Harvey was

6    dismissed from his position as Executive Director for the NEA state affiliate in

7    Mississippi.  Nelson Okino, former Pacific Regional Director of NEA, testified that

8    Harvey was made "available to the NEA" by the Mississippi affiliate because of a

9    rule concerning balance of white and African-American officials at the affiliate.

10   *See* Exhibit 13, Depo. of N. Okino, pp. 75, 99-100.  The then-President of MAE,

11   Michael Marks, testified, however, that Harvey was dismissed by the affiliate's

12   Board of Directors because he "couldn't get along with people" and he was

13   "routinely abrasive to members" of the organization.  *See* Exhibit14, Depo. of

14   M. Marks, p. 18.  In any event, following Harvey's dismissal by the MAE Board of

15   Directors, NEA made arrangements to pay a substantial portion of Harvey's

16   severance package, *see* Exhibit 15, NEA Document No. 0046, and also was

17   involved in the preparation of the terms of settlement and release between MAE and

18   Harvey. *See* Exhibit 16, NEA Document No. 0036.  One of the terms of settlement

19   between MAE and Harvey, which NEA knew was included in the agreement, was

20   as follows:

21

22   OPPOSITION TO RENEWED MOTION OF DEFENDANT NATIONAL
     EDUCATION ASSOCIATION FOR SUMMARY JUDGMENT
     *EEOC, et al. v. NEA, et al.*
     Case No. A01-0225CV (JKS)
     Page 12 of 45

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358

1

2

> Upon his departure from MAE, Tom Harvey's assignments under the USEDP Program *will be directed by NEA*, but they will no longer include any assignments in the state of Mississippi.

3    *Id.* at NEA Document No. 0042 (emphasis added). Following the execution of this

4    agreement, NEA assigned Harvey to Alaska to act as Interim Assistant Executive

5    Director of NEA-Alaska.

6

### B. Knowledge of NEA of Harvey's Abusive Conduct at TABCO and its Mississippi Affiliate

7

8    As noted above, incidents involving Harvey's threatening and violent

9    conduct in the workplace at TABCO were widely publicized, both in the general

10   media in Baltimore and in a newsletter distributed to over 4,000 NEA affiliate

11   employees nationwide.   In addition to this notice of Harvey's conduct, several

12   high-ranking officials of NEA were informed of this conduct by Carole Jeffries in

13   1994. Jeffries told Earl Jones, who was then Director of Human and Civil Rights of

14   NEA, about Harvey's conduct at TABCO.   *See* Exhibit 1, Second Depo. of

15   C. Jeffries, pp. 254-257.  In addition to telling Jones that she believed that she was

16   being discriminated against because she was a woman, Jeffries explained in detail

17   to Jones what was happening to her in her workplace.

18

> I told him [Jones] about the physical things, the finger pointing and the screaming and I told him about how he [Harvey] was interfering in my job search – or actually I don't know if I had begun yet, but how he kept asking me about leaving.  We knew he had a reputation for being a staff breaker or whatever.  That was part of the research that everyone was doing.  And I thought, you know, how can anybody run you away from a job.  That's ridiculous.  We had these discussions.

19

20

21

22

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358

> But I told him that I had found out how he went about doing it, that Linaya [Yates-Lea] was leaving and I felt that it was getting to the point where I may need to consider doing the same thing myself because every time I turned around, he was asking me, why didn't I leave if I didn't like anything he asked me to do as he put it and being told what to do or whatever, why don't you just leave. And he would spew that and he would spit that out and scream it in my face, why don't you leave, why don't you leave, and he'd always make these terrible faces.

*Id.* at pp. 255-256. Jones told her that "it was terrible that he would do it and he said that, you know, he's probably gotten away with it before and he'll probably get away with it again, maybe you do need to think about leaving." *Id.* at p. 257. Jones then referred Jeffries to Leon Felix, who was then Director of the Mid-Atlantic Region for NEA, to discuss potential alternative employment at NEA. *Id.*

Jeffries then went on to contact Leon Felix, and told him what was happening at the TABCO workplace.

> Q.    What details did you give him?
>
> A.    About how Tom [Harvey] was, you know, angry and yelling at me and being – you know, setting me up with a different standard, and, you know, it was just how we were being run out of the office with intimidation.

*See* Exhibit 1, Second Depo. of C. Jeffries, p. 258.

Jeffries also talked to Eugene Dryer, the then Regional Director for the Southeast at NEA, about Harvey's conduct at TABCO. Jeffries spoke to Dryer in person about Harvey at the NEA Convention in 1994. *See* Exhibit 1, Second Depo. of C. Jeffries, p. 125.

OPPOSITION TO RENEWED MOTION OF DEFENDANT NATIONAL
EDUCATION ASSOCIATION FOR SUMMARY JUDGMENT
*EEOC, et al. v. NEA, et al.*
Case No. A01-0225CV (JKS)
Page 14 of 45

1

2

> I explained to him it was more than a personality conflict that Tom and I had, that it was Tom's terrible treatment of me that caused the problem, and that I had filed the EEOC cases against him, charges against him, and that I had filed a grievance against him. And I said, I wouldn't have done that if he hadn't done those things to me, how in the world could you see – could you hire him or see him hired, help him getting hired in another area to do the same thing to somebody else.

*See* Exhibit 1, Second Depo. of C. Jeffries, pp. 261-262.  She also related to Dryer "how generally he [Harvey] was intimidating again and that he treated me differently and yelled at me and screamed at me." *Id.* at p. 263.

Even though NEA had actual and constructive knowledge of Harvey's behavior at TABCO in 1994, Harvey was allowed to join the USEDP, and become an employee of NEA, and the Executive Director of the NEA state affiliate in Mississippi.

Deloris Rozier, Director of Affiliate Capacity Building and Membership Organizing at NEA (*see* attached Exhibit 26, Depo. of D. Rozier, p. 3), testified that she went to Mississippi to assist Tom Harvey with "membership and capacity building" when he was Executive Director of the state affiliate.  *Id.*, Depo. of D. Rozier, pp. 11, 12, 24 and 25.  While in Mississippi, Ms. Rozier saw him engage in "yelling" and "pointing his finger" at a meeting in the affiliate workplace to such an extent that he was pulled out of the room by another NEA official.  *Id.*, Depo. of D. Rozier, pp. 108-111.  After witnessing this, Ms. Rozier told Larry Diebold, the NEA official who was later responsible for assigning Harvey to Alaska, "I

OPPOSITION TO RENEWED MOTION OF DEFENDANT NATIONAL
EDUCATION ASSOCIATION FOR SUMMARY JUDGMENT
*EEOC, et al. v. NEA, et al.*
Case No. A01-0225CV (JKS)
Page 15 of 45

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358

1   witnessed Tom's yelling. And because I have now seen it, we can deal with it."

2   *Id.*, Depo. of D. Rozier, p. 112. While in Mississippi, Ms. Rozier discussed the

3   inappropriateness of "yelling" in the workplace with Harvey on several occasions.

4   *Id.*, Depo. of D. Rozier, pp. 113-121. Harvey told Ms. Rozier that he wanted "to

5   change and be different." *Id.*, at p. 116. Harvey acknowledged to Ms. Rozier that

6   his yelling presented a problem. *Id.* at p. 117. Ms. Rozier gave Harvey suggestions

7   on how to address his yelling problem. *Id.* at pp. 117-118. Ms. Rozier told Harvey,

8   "Yelling is not appropriate, Tom, for your staff, period," and "It's not appropriate to

9   yell at your staff." *Id.* at p. 120.

### C.    Assignment of Thomas Harvey by NEA to its Alaska Affiliate

Upon his departure from MAE, Tom Harvey's assignments under
the USEDP Program *will be directed by NEA*, but they will no
longer include any assignments in the state of Mississippi.

13  Exhibit 16 at NEA Document No. 0042 (emphasis added).

14      Pursuant to this provision of the settlement agreement between Harvey and

15  the NEA Mississippi affiliate, NEA proceeded to find another position for Harvey

16  in the USEDP Program. Larry Diebold, then-Special Assistant to the Executive

17  Director of NEA, testified that he discussed the availability of Harvey with Vernon

18  Marshall, who was then Executive Director of NEA-Alaska, as well as an NEA

19  employee. "And he [Marshall] wanted to know if he could get Harvey up there on

20  some kind of a short-term basis to fill in for one of his managers." *See* Exhibit 12,

21  Depo. of L. Diebold, p. 94. Diebold testified that he told Marshall that, "Yeah, he

22  OPPOSITION TO RENEWED MOTION OF DEFENDANT NATIONAL
EDUCATION ASSOCIATION FOR SUMMARY JUDGMENT
*EEOC, et al. v. NEA, et al.*
Case No. A01-0225CV (JKS)
Page 16 of 45

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358

1    [Harvey] could be available." *Id.* at p. 95.  Harvey was going to continue on the

2    NEA payroll after going to Alaska, "as long as the agreement with Mississippi was

3    still in place." *Id.* at p. 98.

4        NEA and Harvey understood from the beginning of Harvey's time in Alaska

5    that he was being placed in Alaska as an employee of the national organization.  In

6    an e-mail from Harvey to Diebold at the outset of his employment in Alaska,

7    Harvey suggested the following message be sent by NEA to him "Re: NEA-Alaska

8    Assignment" in order to confirm his "employment with NEA."

> Your duties as an employee under USEDP from 3/1/98 to 8/31/99
> include serving as the Interim Assistant Executive Director for NEA-
> Alaska.  You will be located in Anchorage at least through 12/31/98.
> Your annual salary will be $79,090 plus a $1200 per month housing
> allowance.  You will receive a step increase in accordance with the
> management schedule effective 9/1/98.

*See* Exhibit 17, NEA Document No. 0132.  NEA Human Resources agreed to send

the letter requested by Harvey "confirming his employment" with NEA.  *Id.*, NEA

Document No. 0131.

        Other messages also confirmed Harvey's placement by NEA at NEA-Alaska

as an "assignment."  *See* Exhibit 18, Correspondence from V. Marshall to N. Okino,

dated Feb. 23, 1998; Exhibit 19, Correspondence from V. Marshall to N. Okino and

L. Diebold, dated Nov. 10, 1998.  NEA has testified, in its Rule 30(b)(6) deposition,

that Harvey was an employee of NEA until August 31, 1999.  *See* Exhibit 11, Rule

30(b)(6) Deposition of National Education Association, p. 49.  Diebold has testified

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358

OPPOSITION TO RENEWED MOTION OF DEFENDANT NATIONAL
EDUCATION ASSOCIATION FOR SUMMARY JUDGMENT
*EEOC, et al. v. NEA, et al.*
Case No. A01-0225CV (JKS)
Page 17 of 45

1   that, after Harvey was assigned to Alaska, he continued on the NEA payroll. *See*

2   Exhibit 12, Depo. of L. Diebold, p. 98.    While in Alaska on assignment, Harvey

3   completed NEA timesheets, and sent those to the NEA Pacific Region Office. *See*

4   Exhibit 20, NEA Payroll Records from Deposition Exh. 28.

5       While Harvey was in Alaska as an employee of NEA, an NEA intern also on

6   assignment to the Alaska affiliate, Karen Floyd, reported to NEA that Harvey was

7   engaging in abusive conduct towards a female employee in Alaska.  Ms. Floyd was

8   an NEA intern at NEA-Alaska from around August to November 1998.    *See*

9   attached Exhibit 27, Depo. of K. Floyd, pp. 15-16. This was during the period that

10  Tom Harvey was on assignment by NEA to NEA-Alaska, and was an NEA

11  employee under the USEDP program.    *See* Exhibits 11 and 12.    During her

12  internship, Ms. Floyd called Ms. Rozier at NEA headquarters to tell her of the

13  "extremely uncomfortable ... working conditions" that she was encountering in the

14  NEA-Alaska workplace.  *Id.*, Depo. of K. Floyd, pp. 25-26.  Ms. Floyd had seen

15  Carol Christopher crying after encounters with Tom Harvey, and heard "yelling,

16  screaming and bamming on the desk coming from Tom Harvey's office."  *Id.* at

17  p. 26.  "So I would walk by, I would see him bamming on the desk, yelling at

18  Carol."  *Id.*, Depo. of K. Floyd, p. 27.  ***When Ms. Floyd told Ms. Rozier of these***

19  ***events, Ms. Rozier told her, "Don't get involved."***  *Id.*, Depo. of K. Floyd, p. 28.

20  Ms. Floyd saw Ms. Christopher crying "about four or five times" in the office.  *Id.*,

21  Depo. of K. Floyd, p. 29.  Ms. Christopher told her, "He's yelling at me ... He's

22

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358

1   intimidating me." *Id.* Ms. Floyd personally observed Harvey engaging in "yelling

2   ... extremely loud ... bamming on the desk" in the presence of Ms. Christopher

3   "somewhere between maybe 7 and 10 times." *Id.*, Depo. of K. Floyd, p. 36.

4   Ms. Floyd also heard Harvey use profanity at Ms. Christopher during these

5   "yelling" episodes. *Id.*, Depo. of K. Floyd, p. 133.

### D.   NEA's Control of Harvey's Employment Under the USEDP Guidelines

The National Education Association Guidelines for the Unified State
Executive Director Program, which are attached to the Declaration of Patricia Ann
Orrange, filed with NEA's Memorandum in Support, as Exhibit B, serve as the
rules under which the USEDP is administered. Those rules illustrate, contrary to
the declaration submitted by Ms. Orrange, that NEA reserved authority and control
over the hiring, supervision, direction, evaluation, discipline, and termination of
participants in the USEDP, which included Thomas Harvey from September 1,
1994, through his assignment by NEA to a management position at NEA-Alaska in
February 1998, until August 31, 1999.

•   Under the guidelines, NEA has reserved authority over the selection
of Executive Directors in the USEDP.

> If the SA [State Association] wishes to have its incumbent executive
> director serve as the USEDP Executive Director, the SA shall so
> inform NEA. *If NEA gives its approval*, the SA's incumbent
> executive director shall be selected to serve as the USEDP Executive
> Director.

22  OPPOSITION TO RENEWED MOTION OF DEFENDANT NATIONAL
    EDUCATION ASSOCIATION FOR SUMMARY JUDGMENT
    *EEOC, et al. v. NEA, et al.*
    Case No. A01-0225CV (JKS)
    Page 19 of 45

1

2

3

> If an incumbent executive director is not selected to serve as the USEDP Executive Director, *NEA and the SA shall jointly develop a list of persons that they consider qualified to serve as the USEDP Executive Director.* ... The SA shall select from this list the person that it wishes to have serve as the USEDP Executive Director.

4 *See* Orange Decl., Exh. B, p. 5 (emphasis added).

5      ●    As has been noted, the guidelines provide that, "The USEDP

6 Executive Director shall be an employee of the NEA, ..." *Id.* The guidelines also

7 state that, "NEA shall pay the USEDP Executive Director his or her salary in

8 installments in accordance with NEA's regular payroll practices," and go on to

9 require certain minimum and maximum levels of salary to be paid to USEDP

10 Executive Directors, as well as benefits to be provided. *Id.* at pp. 5-6.

11      ●    The guidelines call for "NEA, the SA and the person selected to serve

12 as USEDP Executive Director" to "jointly determine the USEDP Executive

13 Director's starting date *and the length of the term of his or her employment...*" *Id.*

14 at p. 8 (emphasis added).

15      ●    The guidelines provide that, "At the request of NEA, the USEDP

16 Executive Director shall attend a reasonable number of training sessions,

17 workshops, and/or other meetings designed to improve his or her effectiveness as

18 the USEDP Executive Director..." *Id.* at p. 9.

19      ●    A procedure for the evaluation of USEDP Executive Directors is

20 required under the guidelines.

21

22 OPPOSITION TO RENEWED MOTION OF DEFENDANT NATIONAL
EDUCATION ASSOCIATION FOR SUMMARY JUDGMENT
*EEOC, et al. v. NEA, et al.*
Case No. A01-0225CV (JKS)
Page 20 of 45

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358

> The SA, *after consulting with the NEA Executive Director*, shall institute a procedure for evaluating the performance of the USEDP Executive Director. The specific nature of the evaluation procedure shall be determined by the SA, *provided that the SA, in consultation with the NEA Executive Director, shall evaluate the USEDP Executive Director's performance in writing at least annually.*

*Id.* at p. 9 (emphasis added).

• The guidelines provide detailed rules concerning the circumstances under which USEDP Executive Directors may be terminated. *Id.* at pp. 9-12. Provisions concerning appropriate severance pay in the event of voluntary termination, conduct justifying termination for "cause," and inability of a USEDP Executive Director to perform his or duties are included. *Id.*

• The guidelines provide "minimum" standards for agreements between state associations and the USEDP Executive Directors, including requiring that all such agreements provide, among other terms, that, "The USEDP Executive Director is an employee of NEA under the USEDP..." *Id.* at p. 12.

### E.    NEA's Early Notice and Handling of EEOC Charges

NEA asserts that it does not belong in this suit because NEA and NEA-Alaska are two separate and autonomous organizations. However, testimony from high level NEA and NEA-Alaska officials belie this assertion. And, the depositions of former NEA-Alaska Executive Director Vernon Marshall, NEA General Counsel Bob Chanin, NEA Associate Counsel Maurice Joseph, NEA Executive Director John Wilson, and NEA Regional Director Nelson Okino reveal

1    frequent contacts between NEA-Alaska and NEA soon after the filing of the

2    intervenors' EEOC charges in April concerning the claims underlying the lawsuit

3    filed in this matter.    In fact, the testimony of NEA counsel indicates an

4    attorney-client relationship with its affiliates, in particular, MAE and NEA-Alaska.

5    *See* Exhibit 21, Depo. of M. Joseph, p. 38.

6        •       M. Joseph and B. Chanin talk with Marshall about the EEOC charges

7    soon after they were filed. *See* Exhibit 21, Depo. of M. Joseph, p. 9.

8        •       Marshall discussed the complaints with NEA General Counsel Bob

9    Chanin both at the time that the EEOC charges were filed in 2000, and at the time

10   that the lawsuit was filed in 2001.    *See* Exhibit 22, Depo. of V. Marshall,

11   pp. 162-165.

12       •       Marshall talked with Nelson Okino, NEA Pacific Region Director, on

13   November 6, 2000, about the EEOC complaints filed by the plaintiff-intervenors,

14   reviewing details of the complaints in that conversation. *See* Exhibit 22, Depo. of

15   V. Marshall, pp. 258-259; Exhibit 23 attached Exhibit B, Diary of V. Marshall

16   (D05194).

17       •       NEA   General   Counsel   Chanin,   NEA-Alaska   Counsel   Leslie

18   Longenbaugh, Marshall, and Harvey hold a phone conference concerning the

19   lawsuit filed by the EEOC. *See* Exhibit 24, Depo. of Chanin, pp. 16-17.

20       •       Marshall discussed the EEOC lawsuit with NEA Executive Director

21   John Wilson at a meeting on September 27, 2001.    *See* Exhibit 22, Depo. of

22   OPPOSITION TO RENEWED MOTION OF DEFENDANT NATIONAL
     EDUCATION ASSOCIATION FOR SUMMARY JUDGMENT
     *EEOC, et al. v. NEA, et al.*
     Case No. A01-0225CV (JKS)
     Page 22 of 45

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358

1    V. Marshall, p. 188. During the conversation, Marshall requested that Wilson

2    provide him with copies of Carol Christopher's e-mails and personnel files, as she

3    had recently been an NEA employee. *Id.*, p. 189.

4        Thomas Harvey also testified concerning contact with NEA about the claims

5    filed by plaintiff-intervenors. Harvey stated that he had participated in a telephone

6    conference with Vernon Marshall, NEA General Counsel Bob Chanin, and

7    NEA-Alaska counsel "probably somewhere in the summer of 2000" regarding the

8    filing of the EEOC charges. *See* Exhibit 25, Depo. of T. Harvey, pp. 117-120.

9        NEA Associate Counsel Joseph had between three to four conversations with

10    NEA-Alaska Counsel Leslie Longenbaugh concerning the drafting of the response

11    to the plaintiffs' motion to join NEA as a defendant in the lawsuit. *See* Exhibit 21,

12    Depo. of M. Joseph, p. 17.

13        The evidence, therefore, is undisputed that NEA received information, on

14    multiple occasions, concerning both the EEOC charges filed by the intervenors in

15    2000 and the lawsuit filed by the EEOC in 2001. NEA's claim that it had no real

16    knowledge of this matter and therefore no opportunity to participate in the ultimate

17    conciliation process is clearly not true.

18      **F.**     **Summary**

19        The facts and evidence offered by plaintiffs here illustrate that NEA had

20    early knowledge of the EEOC charges filed against NEA-Alaska because of

21    Harvey. NEA knew it was intimately involved in placing Harvey in the

22    OPPOSITION TO RENEWED MOTION OF DEFENDANT NATIONAL
EDUCATION ASSOCIATION FOR SUMMARY JUDGMENT
*EEOC, et al. v. NEA, et al.*
Case No. A01-0225CV (JKS)
Page 23 of 45

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358

1    NEA-Alaska office and it should have anticipated being included in the court

2    action.

3        The facts and evidence offered by plaintiffs also illustrate that NEA had

4    institutional knowledge of abusive behavior towards women by Thomas Harvey in

5    the workplace prior to and during his assignment – as an NEA employee – to

6    NEA-Alaska. The women who had been verbally abused and threatened by Harvey

7    gave high-ranking officials at NEA detailed accounts of what had happened to them

8    at TABCO. These NEA officials knew that Harvey had engaged in this conduct

9    prior to his inclusion in the USEDP, and his assignment by NEA to its Alaska

10   affiliate. NEA also had knowledge of Harvey's abusive behavior during his time in

11   the USEDP, as an employee of NEA, in Mississippi and Alaska. As a participant in

12   the USEDP, Harvey's retention, evaluation, training, salary, benefits, and

13   termination were all governed by the NEA, under terms of NEA guidelines. These

14   facts are to be considered established for purposes of this motion.

15   **II.    STANDARD FOR SUMMARY JUDGMENT**

16       Summary judgment is appropriate "if the pleadings, depositions, answers to

17   interrogatories, and admissions on file, together with the affidavits, if any, show

18   that there is no genuine issue as to any material fact and that the moving party is

19   entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary

20   judgment is not proper if material factual issues exist for trial. *Warren v. City of*

21   *Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied,* 516 U.S. 1171 (1996). The

22   OPPOSITION TO RENEWED MOTION OF DEFENDANT NATIONAL
EDUCATION ASSOCIATION FOR SUMMARY JUDGMENT
*EEOC, et al. v. NEA, et al.*
Case No. A01-0225CV (JKS)
Page 24 of 45

**FRIEDMAN, RUBIN & WHITE**
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358

1 moving party has the burden of establishing the absence of a genuine issue of

2 material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving

3 party shows the absence of a genuine issue of material fact, the nonmoving party

4 must go beyond the pleadings and identify facts that show a genuine issue for trial.

5 *Id.* at 324. Assuming that there has been sufficient time for discovery, summary

6 judgment should be entered against a "party who fails to make a showing sufficient

7 to establish the existence of an element essential to that party's case, and on which

8 that party will bear the burden of proof at trial." *Id.* at 322.

9     Special rules of construction apply to evaluating summary judgment

10 motions: 1) all reasonable doubts as to the existence of genuine issues of material

11 fact should be resolved against the moving party; 2) all inferences to be drawn from

12 the underlying facts must be viewed in the light most favorable to the nonmoving

13 party; and 3) the court must assume the truth of direct evidence set forth by the

14 nonmoving party if it conflicts with direct evidence produced by the moving party.

15 *T.W. Electrical Service v. Pacific Electrical Contractors,* 809 F.2d 626, 630 (9th

16 Cir. 1987). When different ultimate inferences can be reached, summary judgment

17 is not appropriate. *Sankovich v. Life Ins. Co. of North America,* 638 F.2d 136, 140

18 (9th Cir. 1981). The issue of material fact required by Rule 56 to entitle a party to

19 proceed to trial need not be resolved conclusively in favor of the party asserting its

20 existence; all that is required is sufficient evidence supporting the claimed factual

21 dispute to require a jury or judge to resolve the parties' differing versions of the

22 OPPOSITION TO RENEWED MOTION OF DEFENDANT NATIONAL
EDUCATION ASSOCIATION FOR SUMMARY JUDGMENT
*EEOC, et al. v. NEA, et al.*
Case No. A01-0225CV (JKS)
Page 25 of 45

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358

1   truth at trial. *Id.* At this stage of the litigation, the judge does not weigh conflicting

2   evidence or make credibility determinations. These determinations are the province

3   of the fact finder at trial. *Id.; see also Abdul-Jabbar v. General Motors Corp.,* 85

4   F.3d 407, 410 (9th Cir. 1996) (on a motion for summary judgment, the court is not

5   to weigh the evidence or determine the truth of the matter, but only determine

6   whether there is a genuine issue for trial).

7       The Ninth Circuit has emphasized that a high standard exists for the granting

8   of summary judgment in employment discrimination cases. *Schnidrig v. Columbia*

9   *Machine, Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996) (courts should require very little

10  evidence to survive summary judgment in a discrimination case, because the

11  ultimate question is one that can only be resolved through a searching inquiry – one

12  that is most appropriately conducted by the fact-finder, upon a full record (citations

13  omitted)); *see also Lam v. University of Hawaii*, 40 F.3d 1551, 1563 (9th Cir. 1994)

14  (*quoting Sischo-Nownejad v. Merced Community College Dist.*, 934 F.2d 1104,

15  1111 (9th Cir. 1991)). *See also*, Arthur R. Miller, The Pretrial Rush to Judgment:

16  Are the "Litigation Explosion," "Liability Crisis," and Efficiency Clichés Eroding

17  Our Day in Court and Jury Trial Commitments?, 78 N.Y.U. L. Rev. 982 (2003)

18  ("Given the fact that hyperactive use of pretrial motions threatens long-standing

19  constitutional values, courts should err on the side of the use of a trial and a jury.").

20

21

22  OPPOSITION TO RENEWED MOTION OF DEFENDANT NATIONAL
    EDUCATION ASSOCIATION FOR SUMMARY JUDGMENT
    *EEOC, et al. v. NEA, et al.*
    Case No. A01-0225CV (JKS)
    Page 26 of 45

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358

**III.    ARGUMENT**

###### A.    Under the Facts as Established for Purposes of this Motion, NEA Unlawfully Interfered with Plaintiff-Intervenors' Employment Opportunities at NEA-Alaska, Thereby Violating Title VII

Title VII, 42 U.S.C. § 2000e-2(a) provides that "[i]t shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual *or otherwise to discriminate against any individual* with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin...."    (Emphasis added.) This language has been interpreted to encompass situations in which "a defendant subject to Title VII interferes with an individual's employment opportunities with another employer." *Lutcher v. Musicians Union Local 47*, 633 F.2d 880, 883 n.3 (9th Cir. 1980).

The "interference with employment opportunities" claim under Title VII was first articulated in *Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338 (D.C. Cir. 1973).    In that case, a male employee of a nursing referral office alleged that supervisors at the defendant hospital, which was not his direct employer, had refused to put him to work because he was not female.    The district court denied the defendant hospital's motion for summary judgment, and the defendant hospital appealed. On appeal, the D.C. Circuit held that Title VII would apply to the actions of the defendant hospital, even though the hospital was not the direct employer of the plaintiff employee.    "To permit a covered employer to exploit circumstances

1    peculiarly affording it the capability of discriminatorily interfering with an

2    individual's employment opportunities with another employer, while it could not do

3    so with respect to employment in its own service, would be to condone continued

4    use of the very criteria for employment that Congress has prohibited." *Id.* at 1341.

5        The Ninth Circuit first addressed the issue of indirect employer liability

6    under *Sibley* in *Lutcher*, where the court noted that for Title VII to apply, "there

7    must be some connection with an employment relationship," though the

8    "connection ... need not necessarily be direct." *Id.* at 883. Citing *Sibley*, the court

9    explained that "[t]his might occur where a defendant subject to Title VII interferes

10   with an individual's employment opportunities with another employer." *Id.* at n.3.

11   In *Gomez v. Alexian Brothers Hospital*, 698 F.2d 1019 (9th Cir. 1983), the Ninth

12   Circuit again applied the reasoning of *Sibley*, holding that the defendant hospital

13   could be held liable under Title VII for its discriminatory treatment of the plaintiff,

14   notwithstanding the fact that the plaintiff was employed by a third party, if the

15   defendant had interfered with the plaintiff's employment by that third party.

16       In *Association of Mexican-American Educators v. California*, 231 F.2d 572

17   (9th Cir. 2000) (*"AMAE"*), the Ninth Circuit again held a third party could be held

18   liable for discrimination under Title VII. In that case, the plaintiffs were a class of

19   Mexican-American, Asian-American, and African-American prospective and

20   current teachers who challenged California's use of a skills test – which was a

21   prerequisite to employment in the state's public schools – under Title VII. *Id.* at

22   OPPOSITION TO RENEWED MOTION OF DEFENDANT NATIONAL
     EDUCATION ASSOCIATION FOR SUMMARY JUDGMENT
     *EEOC, et al. v. NEA, et al.*
     Case No. A01-0225CV (JKS)
     Page 28 of 45

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358

1  577.  The plaintiffs alleged that the test had a disparate impact on minorities.  *Id.* at

2  578.

3          The Ninth Circuit *en banc* held that Title VII covered the plaintiffs' claims,

4  agreeing with the district court that the allegedly racially discriminatory test

5  "interfered" with the plaintiffs' relationship with their future employers, the school

6  districts.  "Our conclusion is dictated by the peculiar degree of control that the State

7  of California exercises over local school districts."  *Id.* at 581.  "Against that

8  background of 'plenary' state control, we have no difficulty concluding that the

9  State of California is in a theoretical *and* practical position to 'interfere' with the

10  employment decisions of local school districts."  *Id.* at 582 (emphasis supplied).

11  The court likened the relationship between the State of California and the local

12  school districts to the relationship between a corporate parent and its wholly owned

13  subsidiaries.  In analyzing that relationship, the court stated as follows:

14          'In the absence of special circumstances, a parent corporation is not
        liable for the Title VII violations of its wholly owned subsidiary.'
15      *Watson v. Gulf & W. Indus.*, 650 F.2d 990, 993 (9th Cir. 1981).  In
        *Watson*, this court held that the parent corporation was not subject to
16      Title VII because the case presented no 'special circumstances.'  *Id.*
        But the court went on to explain that, '[i]f there was any evidence
17      that [the parent] participated in or influenced the employment
        policies of [the subsidiary], ... then we would be presented with a
18      very different case.'  *Id.*  Ours is that 'very different case.'  The
        'parent' state has participated extensively in, and influenced, the
19      employment policies and practices of the 'subsidiary' local school
        districts; therefore, the state is covered by Title VII.

20
    *Id.*
21

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358

The recent decision of the Ninth Circuit in *Anderson v. Pacific Maritime Assn.*, 336 F.3d 924 (9th Cir. 2003), further clarified the standard to be applied in determining whether a third party may be held liable for "interference" with an employment relationship under Title VII. In that case, longshoremen employed by various companies brought an action against an association of those employers, the Pacific Maritime Association ("PMA"), which negotiated the Collective Bargaining Agreement under which the longshoremen worked. The court noted that the association had no control or influence over the conditions of the workplaces in which the longshoremen were employed.

> Under the CBA, the member-employers and their walking bosses and foremen – but not PMA – have the responsibility to 'supervise, place or discharge men and to direct the work and activities of longshoremen on the job in a safe, efficient and proper manner.' The member-employers – but not PMA – also retain the right to discipline any longshoremen for 'incompetence, insubordination or failure to perform the work as required in conformance with the provisions of [the CBA].' The CBA lays out an extensive system for maintaining discipline, safety, and conformity with the master labor agreement on the docks, but these provisions place the burden of meeting these standards on the longshoremen, the Union, and the member-employers and their supervisors – not PMA.

*Id.* at 926. The court went on to explain the various additional ways in which PMA had no control over the conditions under which the longshoremen worked. "It does not supervise the longshoremen. It has no power to hire or fire the longshoremen. It has no power to discipline longshoremen. It does not supervise the work sites of its member-employees. It is undisputed that the monitoring and control over those

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358

1    sites, as well as the control of the employees, is within the **sole** province of the

2    member-employers." *Id.* at 927 (emphasis supplied).

3        Under these circumstances, the court held that the PMA could not be held

4    liable under Title VII for the workplace conditions encountered by the plaintiff

5    longshoremen.    The court stated its reasoning for the decision in a lengthy

6    discussion of the *Sibley* opinion, and the Ninth Circuit cases on the issue that

7    followed, and succinctly summarized its analysis as follows:

8          In light of these facts, we think the imposition of indirect-employer
     liability under Title VII inappropriate. *Sibley* and its Ninth Circuit

9          progeny condone liability where there exists discriminatory
     'interference' by the indirect employer and where the indirect

10         employer had some peculiar control over the employee's relationship
     with the direct employer. Here, there was no such interference by

11         PMA. ***It did not cause the hostile work environment.*** And its
     power to stop the hostile work environment was so limited that it

12         cannot be said to have 'interfered' by failing to take corrective
     measures to stop the harassment when the power to take those

13         measures belonged to the member-employers.

14   *Id.* at 932 (emphasis added).

15       As applied to the present case, *Sibley* and its Ninth Circuit progeny require

16   that NEA's summary judgment motion be denied. NEA both "interfered" with

17   plaintiff-intervenors' employment opportunities at NEA-Alaska, and enjoyed

18   "peculiar control" over their relationship with NEA-Alaska. NEA "interfered" with

19   plaintiff-intervenors' employment opportunities by placing and employing a known

20   harasser of women in the NEA-Alaska workplace. Viewing the facts in a light most

21   favorable to plaintiffs, NEA had detailed knowledge concerning Harvey's prior

22   OPPOSITION TO RENEWED MOTION OF DEFENDANT NATIONAL
     EDUCATION ASSOCIATION FOR SUMMARY JUDGMENT
     *EEOC, et al. v. NEA, et al.*
     Case No. A01-0225CV (JKS)
     Page 31 of 45

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358

1   harassment of women, both at the time that he was approved for participation in the

2   USEDP, and at the time of his assignment by NEA to its Alaska affiliate.   In

3   addition, NEA had knowledge of Harvey's abusive behavior, both during his time

4   as an NEA employee in Mississippi, and during his assignment as an NEA

5   employee to Alaska.  By placing Harvey in the NEA-Alaska workplace, and failing

6   to take any action concerning his abusive conduct at NEA-Alaska while he was an

7   NEA employee, NEA "interfered" with plaintiff-intervenors' ability to work in an

8   environment free of harassment and intimidation.   This constituted a violation of

9   Title VII, under *Sibley* and its progeny.

10       As was noted in both *Sibley* and *AMAE*, "To permit a covered employer to

11   exploit circumstances peculiarly affording it the capability of discriminatorily

12   interfering with an individual's employment opportunities with another employer,

13   while it could not do so with respect to employment in its own service, would be to

14   condone continued use of the very criteria for employment that Congress has

15   prohibited." *AMAE*, 231 F.2d at 580, *quoting Sibley*, 488 F.2d at 1341.  If Carol

16   Christopher, Julie Bhend, and Carmela Chamara had been directly employed by

17   NEA, the placement and employment by NEA of a known harasser as their

18   supervisor, with resulting harm, would have constituted a violation of Title VII.

19   *See E.E.O.C. v. Hacienda Hotel*, 881 F.2d 1504, 1515-16 (9th Cir. 1989) (Holding

20   that "employers are liable for failing ***to remedy or prevent*** a hostile or offensive

21   work environment of which management-level employees knew, or in the exercise

22   OPPOSITION TO RENEWED MOTION OF DEFENDANT NATIONAL
EDUCATION ASSOCIATION FOR SUMMARY JUDGMENT
*EEOC, et al. v. NEA, et al.*
Case No. A01-0225CV (JKS)
Page 32 of 45

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358

1    of reasonable care should have known." (Emphasis supplied)). By assigning a

2    known harasser to be a supervisor at its Alaska affiliate, and employing that

3    supervisor even after learning of his abusive conduct, NEA failed to remedy and

4    failed to prevent the hostile work environment that was encountered by

5    plaintiff-intervenors at NEA-Alaska. NEA should not be allowed to escape its

6    obligations as a covered employer under Title VII just because it did not issue

7    paychecks to the plaintiff-intervenors. To do so "would be to condone continued

8    use of the very criteria for employment that Congress has prohibited." *AMAE*, 231

9    F.2d at 580, *quoting Sibley*, 488 F.2d at 1341.

10        Unlike the defendant association in *Anderson*, NEA was directly involved in

11    setting the terms and conditions of employment at NEA-Alaska. NEA sent *its own*

12    *employees* to manage the workplace at NEA-Alaska. Harvey was an NEA

13    employee when he came to Alaska. Vernon Marshall, the Executive Director of

14    NEA-Alaska during the events at issue in this case, was an NEA employee, as a

15    participant in the USEDP. *See* Exhibit 12, Depo. of L. Diebold, p. 51. NEA had

16    guidelines for the retention, evaluation, training, salary, benefits, and termination of

17    these managers. Other NEA managers were responsible for assigning Harvey to

18    Alaska. The defendant association in *Anderson* had *nothing* to do with the work

19    environment encountered by the plaintiff employees; NEA had *everything* to do

20    with creating the work environment faced by the plaintiff-intervenors here. In

21    *Anderson*, the court stated that the defendant association "did not cause the hostile

22    OPPOSITION TO RENEWED MOTION OF DEFENDANT NATIONAL
EDUCATION ASSOCIATION FOR SUMMARY JUDGMENT
*EEOC, et al. v. NEA, et al.*
Case No. A01-0225CV (JKS)
Page 33 of 45

1    work environment" at issue there.  336 F.3d at 932.  Here, NEA **directly** caused the

2    hostile work environment, by sending the supervisor responsible for creating the

3    hostile work environment into the NEA-Alaska workplace, and continuing to

4    employ him even after learning of his abusive conduct.

5        In *AMAE*, the court noted that the relationship between the State of

6    California and its local school districts was akin to the relationship between a parent

7    and subsidiary corporation, and certainly that analogy would hold true for the

8    relationship between NEA and NEA-Alaska.  As was also noted in *AMAE*, a parent

9    corporation could not be held liable for violations of Title VII by its subsidiary,

10   unless "there was ... evidence that [the parent] participated in or influenced the

11   employment policies of [the subsidiary]...."  *AMAE*, 231 F.3d at 582, *quoting*

12   *Watson*, 650 F.2d at 993.  In this case, NEA did influence the employment policies

13   and practices at NEA-Alaska by having its employees not only supervise the NEA-

14   Alaska workplace, but assign and place the management for that workplace as well.

15   One NEA employee, Thomas Harvey, engaged in the discriminatory practices at

16   issue in the case.  Another NEA employee, Vernon Marshall, failed to remedy the

17   hostile work environment encountered by plaintiff-intervenors.  NEA can attempt to

18   run from Harvey and Marshall, but it cannot hide.    They were both NEA

19   employees.   They were both subject to NEA guidelines concerning their hiring,

20   evaluation, training, performance, and termination.  Other NEA employees, Larry

21   Diebold and Nelson Okino, were primarily responsible for assigning Harvey to his

22   OPPOSITION TO RENEWED MOTION OF DEFENDANT NATIONAL
     EDUCATION ASSOCIATION FOR SUMMARY JUDGMENT
     *EEOC, et al. v. NEA, et al.*
     Case No. A01-0225CV (JKS)
     Page 34 of 45

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358

1    management position at NEA-Alaska. There can be no question that NEA, through

2    its employees, was instrumental both in setting the terms and conditions of NEA-

3    Alaska employees, including plaintiff-intervenors, and in influencing the policies of

4    employment there.

5         In her dissent in *Anderson*, Judge Fletcher noted that the Ninth Circuit has

6    "adopted a broad interpretation of *Sibley*, with the caveat that 'there must be some

7    connection with an employment relationship for Title VII protections to apply.'"

8    336 F.2d at 939, *quoting Lutcher*, 633 F.2d at 883. There is nothing in *Anderson*

9    that departs from that "broad interpretation of *Sibley*." *Anderson* involved an

10   association that had no influence on any aspect of the terms and conditions of the

11   plaintiff employees. As has been shown, NEA had a significant influence on the

12   terms and conditions of plaintiff-intervenors' employment. NEA's conduct

13   certainly had a "connection" – a significant connection – with the employment

14   relationship between plaintiff-intervenors and NEA-Alaska. Under such

15   circumstances, *Sibley* should be applicable to hold NEA responsible for violations

16   of Title VII and AS 18.80.220, as alleged in plaintiffs' complaints.

17        NEA claims that, because it had no opportunity to "correct promptly any

18   sexually harassing behavior" by Harvey, it cannot be held liable for any Title VII

19   violation which may have occurred, under *Burlington Industries, Inc. v. Ellerth*, 524

20   U.S. 742 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). NEA's

21   violation of Title VII, however, comes not only in the failure to ***correct*** the sexually

22   OPPOSITION TO RENEWED MOTION OF DEFENDANT NATIONAL
     EDUCATION ASSOCIATION FOR SUMMARY JUDGMENT
     *EEOC, et al. v. NEA, et al.*
     Case No. A01-0225CV (JKS)
     Page 35 of 45

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358

1   harassing behavior by Harvey, but rather by its failure to ***prevent*** the behavior from

2   occurring. Karen Floyd testified that she told a highly-placed NEA official, Deloris

3   Rozier, of Harvey's abusive conduct towards Carol Christopher in Alaska while

4   Harvey was an NEA employee. NEA had an opportunity at that point to ***prevent***

5   ***and correct*** the abusive conduct being engaged in by Harvey, but consciously chose

6   not to do so. The affirmative defense established by *Faragher* and *Ellerth* requires

7   that an employer prove that it "exercised reasonable care to ***prevent and correct***"

8   the sexually harassing behavior at issue. *Faragher*, 524 U.S. at 807; *Ellerth*, 524

9   U.S. at 745 (emphasis added). NEA was in a position to "prevent" Harvey's

10  harassing behavior when it assigned Harvey to Alaska; it failed to meet that

11  obligation. NEA was in a position, as Harvey's employer, to "prevent and correct"

12  his conduct when it was informed of that conduct by Karen Floyd; it again failed to

13  act. Under the USEDP Guidelines, NEA had responsibility for the evaluation and

14  training of participants in the USEDP program, including Harvey. NEA failed to

15  take any action to either prevent or correct Harvey's abusive conduct, despite

16  having received notice of that conduct on multiple occasions throughout his time as

17  an NEA employee.

18      NEA also argues that it should not be held responsible for Harvey's actions,

19  even though he was an NEA employee at the time of his assignment and initial

20  employment in Alaska, because it had no "right to control" his actions or conduct.

21  This argument ignores the clear provisions of the USEDP Guidelines, which

22  OPPOSITION TO RENEWED MOTION OF DEFENDANT NATIONAL
    EDUCATION ASSOCIATION FOR SUMMARY JUDGMENT
    *EEOC, et al. v. NEA, et al.*
    Case No. A01-0225CV (JKS)
    Page 36 of 45

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358

1  provide that the participants in the program are hired, evaluated, trained,

2  compensated, and terminated subject to standards established by the NEA. This

3  argument also ignores the provision of Harvey's severance agreement with the

4  Mississippi affiliate, which was entered into with the full knowledge of NEA,

5  which provided that, "Upon his departure from MAE, Tom Harvey's assignments

6  under the USEDP Program *will be directed by NEA*, but they will no longer include

7  any assignments in the state of Mississippi." *See* Exhibit 16. Under terms of both

8  of these documents, NEA had the "right to control" Harvey. NEA may not have

9  exercised the control that it had over Harvey, but it does not mean that it did not

10  have the "right to control" his actions and conduct.

11      The self-serving declaration of Patricia Orrange concerning the reasons why

12  Harvey was an NEA employee does not serve to mask the language of the

13  documents that actually concerned his employment. The USEDP Guidelines, as

14  well as other evidence offered concerning Harvey's employment by NEA, do not

15  provide that Harvey was an NEA employee only for certain purposes. In fact, in

16  her role as the Rule 30(b)(6) representative for NEA, Orrange did not state that

17  Harvey's employment by NEA was conditional, or only for certain reasons.

18  Certainly, NEA has every reason to distance itself from Harvey and his conduct;

19  however, the documents applicable to his employment speak for themselves.

20  Harvey was an NEA employee, both at the time of his assignment by NEA to its

21  Alaska affiliate, and during his employment as Interim Assistant Executive

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358

1  Director.  No amount of "spin-doctoring" by NEA can change that core fact in this

2  case.

### B.  NEA is a Proper Defendant even though It was not Named in the Original EEOC Charges or Engaged in Conciliation

The Ninth Circuit has long held that EEOC charges must be construed with utmost liberality since they are made by those unschooled in the technicalities of formal pleading.  *Chung v. Pomona Valley Community Hosp.*, 667 F.2d 788, 790 (9th Cir. 1982), *quoting Kaplan v. International Alliance of Theatrical and State Employees and Motion Picture Machine Operators*, 525 F.2d 1354, 1359 (9th Cir. 1975); *see also Sosa v. Hiraoka,* 920 F.2d 1451, 1458 (9th Cir. 1990).  Further, the EEOC charge "does not demand procedural exactness.  It is sufficient that the EEOC be apprised, in general terms, of the alleged discriminatory parties and the alleged discriminatory acts."  *Id.* (*quoting Kaplan*, 525 F.2d at 1359); *see also Sosa* at 1458.

The general rule is that, ordinarily, Title VII claimants may sue only those named in the EEOC charge because only they had an opportunity to respond to the charges during the administrative proceeding.  *See* 2 A. Larson *Employment Discrimination*, § 49.11(c)(2) (1990).  However, the Ninth Circuit has carved out two primary exceptions to this rule.  One, a Title VII action can be brought against persons not named in the EEOC charge as long as they were involved in the acts giving rise to the EEOC claims.  *Ortez v. Washington County,* 88 F.3d 804, 808 (9th

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358

1    Cir. 1996), *citing to Sosa v. Hiraoka,* 920 F.2d 1451, 1459 (9th Cir. 1990)*, citing to*

2    *Wrighten v. Metropolitan Hosp.*, 726 F.2d 1346, 1352 (9th Cir. 1984). Two, where

3    the EEOC or defendants themselves "should have anticipated" that the claimant

4    would name those defendants in a Title VII suit, the court has jurisdiction over

5    those defendants even though they were not named in the EEOC charges. *Ortez,*

6    *supra, citing to Sosa* at 1458-59. *See also Chung,* 667 F.2d at 792 (district court

7    erred in dismissing claims against doctors not named in EEOC charge, but who

8    participated in denial of promotions). In this case, the plaintiff-intervenors

9    specifically alleged in their EEOC charges that Tom Harvey subjected them to

10   workplace harassment. NEA, Harvey's employer, assigned him to the NEA-Alaska

11   office where the Title VII violations, the acts giving rise to this lawsuit, occurred.

12   Given its employment relationship with Harvey, after it was notified of the

13   intervenors' charges soon after they were filed, NEA ***should have anticipated***

14   becoming a defendant in a subsequent action.

15       In addition, there are three other well-established "exceptions" to the general

16   rule that Title VII claimants may sue only those named in the EEOC charge because

17   only they had an opportunity to respond to the charges during the administrative

18   proceeding apply to this case. *Sosa,* 920 F.2d at 1459. First, if the respondent

19   named in the EEOC charge is a principal or agent of the unnamed party, or if they

20   are "substantially identical parties," suit may proceed against the unnamed party.

21   Second, suit may proceed if the EEOC could have inferred that the unnamed party

22   OPPOSITION TO RENEWED MOTION OF DEFENDANT NATIONAL
     EDUCATION ASSOCIATION FOR SUMMARY JUDGMENT
     *EEOC, et al. v. NEA, et al.*
     Case No. A01-0225CV (JKS)
     Page 39 of 45

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358

1    violated Title VII. Third, if the unnamed party had notice of the EEOC conciliation

2    efforts and participated in the EEOC proceedings, then suit may proceed against the

3    unnamed party. *Sosa*, 920 F.2d at 1459 (quoting 2 A. Larson at § 49.11( c)(2)).

4    Professor Larson explains that:

> Courts are particularly likely to invoke one of these exceptions when
> the initial EEOC charge was filed without the assistance of counsel,
> since the charging party may not understand the need to name all
> parties in the charge, or may be unable to appreciate the separate
> legal identities of, for instance, a corporation and it its officers.

8    *Id.*

9    In analyzing the applicability of these exceptions to this case, we first note

10   that there is no indication that these women had any assistance of counsel in

11   preparing their charges. Second, since filing suit, the plaintiffs have been able to

12   uncover evidence of NEA's involvement in the Title VII violations and NEA's

13   knowledge of the EEOC investigation and conciliation process. NEA received

14   actual notice of the EEOC charges soon after they were filed. *See* Exhibit 21,

15   Depo. of M. Joseph, p. 9. It was represented in the conciliation proceedings by two

16   of its employees, Tom Harvey and Vernon Marshall.

17   In *Sosa*, the court held that the trustees who governed the District were

18   "substantially identical" parties. *Id.* at 1460. *Also see Chung* (it permitted suit

19   against doctors not named in the EEOC charge and whose only apparent role in

20   denial of promotions was as directors of the hospital named in the charge). 667

21   F.2d at 790, 792; *see also Kaplan*, 525 F.2d at 1359 (international union was

22   OPPOSITION TO RENEWED MOTION OF DEFENDANT NATIONAL
EDUCATION ASSOCIATION FOR SUMMARY JUDGMENT
*EEOC, et al. v. NEA, et al.*
Case No. A01-0225CV (JKS)
Page 40 of 45

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358

1   subject to Title VII suit where EEOC charge identified only the union local as a

2   respondent.); *see also Sosa*, 920 F.2d at 1460 (trustees were subject to Title VII suit

3   where EEOC charge identified only the District as a respondent.).  In this case,

4   NEA controlled the workplace at NEA-Alaska, the respondent in these charges,

5   through its employees (Harvey and Marshall), just as the director-doctors governed

6   the hospital named as respondent in Chung's EEOC charges.  The facts here are

7   more compelling than in *Chung, Kaplan,* or *Sosa*, in light of NEA's role; it placed

8   Harvey in the NEA-Alaska office notwithstanding its knowledge of his history of

9   previous civil rights abuses; it paid his wages and benefits; it retained power over

10  his employment and termination through the USEDP Guidelines; and NEA

11  maintained an attorney-client relationship with NEA-Alaska, making NEA and

12  NEA-Alaska "substantially identical parties."  NEA is a proper party to this court

13  action.

14       EEOC made an effort to ascertain the relationship between NEA and

15  NEA-Alaska during the administrative stage.  NEA-Alaska represented to the

16  EEOC that there was no significant relationship between the two entities, and that

17  NEA had not participated in the hiring and retention of Harvey at NEA-Alaska. *See*

18  Exhibit 26.  NEA, notwithstanding its notice of the charges, remained silent as

19  NEA-Alaska made inaccurate representations of its relationship with NEA, thereby

20  acquiescing to its representation by NEA-Alaska and its employees Harvey and

21  Marshall in the EEOC administrative procedure.

22  OPPOSITION TO RENEWED MOTION OF DEFENDANT NATIONAL
    EDUCATION ASSOCIATION FOR SUMMARY JUDGMENT
    *EEOC, et al. v. NEA, et al.*
    Case No. A01-0225CV (JKS)
    Page 41 of 45

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358

1

2

### C. Plaintiff-Intervenors' State-Law Claims Against NEA Have Not Been "Voluntarily Dismissed"

NEA states in its Renewed Motion that "the intervenors have voluntarily dismissed their state-law claims," implying that the state-law claims as against NEA have been dismissed. That is not accurate. As a result of the state court action in *Christopher, et al. v. NEA-Alaska*, Case No. 3AN-04-3828 Civil, filed after summary judgment was entered by this court in December 2003, plaintiff-intervenors agreed to dismiss with prejudice the state-law claims brought against NEA-Alaska. NEA, however, was not a party to that case; therefore, the stipulation and order of dismissal could have had no application, and had no application, to any claim, state or federal, brought against NEA by plaintiff-intervenors. By the reinstatement of this case by the Ninth Circuit, plaintiff-intervenors' state-law claims for violation of AS 18.80.220, negligent hiring and retention and intentional infliction of emotional distress against NEA have been reinstated, and have not been dismissed by way of any stipulation or order. NEA has chosen not to include those claims in this motion, based apparently on an erroneous understanding of the proceedings in the state court case, and therefore any arguments concerning those claims have not been addressed in this opposition.

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358

## CONCLUSION

The myriad arguments offered by NEA in support of its effort to be dismissed from this case without trial cannot hide the facts concerning its involvement with Tom Harvey. NEA employed Harvey as a participant in its USEDP program. NEA employed Harvey at the time of his assignment to NEA-Alaska, and facilitated that assignment at the highest levels of its organization. NEA employed Harvey when he was Interim Assistant Executive Director. NEA caused Harvey to be employed in the NEA-Alaska workplace, where he created an extraordinarily hostile and frightening work environment. NEA knew that Harvey had engaged in such conduct in the past, yet still chose to assign him to a managerial position in Alaska. NEA learned that Harvey was acting in the same abusive manner while Harvey was an NEA employee in Alaska, yet failed to take any action concerning that conduct. These facts are established for purposes of this motion, and clearly support the claim that NEA "interfered" with the employment opportunities enjoyed by plaintiff-intervenors at NEA-Alaska. The facts also illustrate that NEA is a proper defendant in this action.

The position taken by NEA in support of this motion does not dispute the *existence* of evidence regarding the assignment and employment of Tom Harvey, but instead presents the view most favorable to NEA of how that evidence should be regarded. The Ninth Circuit has taken a dim view of such an approach. *See Raad v. Fairbanks North Star Borough School Dist.*, 323 F.3d 1185, 1194 (9th Cir.

OPPOSITION TO RENEWED MOTION OF DEFENDANT NATIONAL
EDUCATION ASSOCIATION FOR SUMMARY JUDGMENT
*EEOC, et al. v. NEA, et al.*
Case No. A01-0225CV (JKS)
Page 43 of 45

1  2003) ("Here, the district court... misapplied the standard of review, failed to draw

2  all reasonable inferences in favor of Raad, the nonmoving party, and impermissibly

3  substituted its judgment concerning the weight of the evidence for the jury's.")

4  NEA's attack on the evidence concerning its role in the assignment and

5  employment of Tom Harvey must be decided by the jury at trial, rather than by

6  dispositive motion practice.   A summary judgment motion is an inappropriate

7  forum for resolution of these issues.   *See Woodward v. Amertech Mobile*

8  *Communications, Inc.*, 2000 WL 680415 (S.D. Ind. 3/20/00 at *1-2) ("Too easily,

9  however, a motion for summary judgment can turn into a massive paper trial that

10  only adds delay and expense because material facts are plainly in dispute").

NEA's summary judgment motion should, in all respects, be denied.

DATED this 22nd day of December 2005.

By _____
Kenneth R. Friedman
Alaska Bar No. 9210060

By _____
Terry A. Venneberg
Alaska Bar No. 8706056
Attorneys for Plaintiff-Intervenors

By _____
Carmen Flores
Attorney for Plaintiff EEOC

OPPOSITION TO RENEWED MOTION OF DEFENDANT NATIONAL
EDUCATION ASSOCIATION FOR SUMMARY JUDGMENT
*EEOC, et al. v. NEA, et al.*
Case No. A01-0225CV (JKS)
Page 44 of 45

FRIEDMAN, RUBIN & WHITE
1126 Highland Avenue
Bremerton, WA 98337
360-782-4300 ~ Fax: 360-782-4358