JEREMIAH A. COLLINS
BREDHOFF & KAISER, P.L.L.C.
805 FIFTEENTH STREET, N.W.
WASHINGTON, D.C. 20005
PHONE: 202-842-2600
FAX: 202-842-1888

DOUGLAS S. PARKER
PRESTON GATES & ELLIS LLP
420 L Street, Suite 400
Anchorage, AK 99501-1971
Phone: 907-276-1969
Fax: 907-276-1365

Attorneys for Defendant National Education Association

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, <br><br> Plaintiff, <br><br> CAROL CHRISTOPHER, JULIE BHEND and CARMELA CHAMARA, <br><br> Plaintiff-Intervenors, <br><br> v. <br><br> NATIONAL EDUCATION ASSOCIATION-ALASKA and NATIONAL EDUCATION ASSOCIATION, <br><br> Defendants. | **Case No. A01-0225 CV (JKS)** |

**REPLY MEMORANDUM IN SUPPORT OF
RENEWED MOTION OF DEFENDANT NATIONAL
EDUCATION ASSOCIATION FOR SUMMARY JUDGMENT**

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

Reply in Support of Renewed Motion of Defendant
NEA for Summary Judgment
Page 1 of 19

Defendant National Education Association ("NEA") submits this memorandum in response to plaintiffs' Opposition to Renewed Motion of Defendant National Education Association for Summary Judgment ("Plf. Opp."). As we will show, no rational trier of fact could find NEA responsible for the alleged harassment of the intervenors, who were not NEA employees. Furthermore, the Title VII claims against NEA should be dismissed because no EEOC charge was filed against NEA. As for the state-law claims that the intervenors wish to pursue, this Court should not exercise jurisdiction over them; and those claims are without merit in any event.

## I. NEA IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' TITLE VII CLAIMS

### A. Summary Judgment Is Required Because Plaintiffs' Claims Are Predicated On Conduct That Is Alleged To Have Occurred After Tom Harvey Had Become NEA-Alaska's Permanent Assistant Executive Director And No Longer Was A Participant In The USEDP

In our Memorandum of Law in Support of the Renewed Motion of Defendant National Educational Association for Summary Judgment ("NEA Mem."), we noted that, even under the plaintiffs' own legal theory, NEA cannot be held responsible for any conduct on Tom Harvey's part that occurred after August 31, 1999, when Harvey became NEA-Alaska's permanent Assistant Executive Director and ceased to be a participant in NEA's Unified State Executive Director Program ("USEDP"). *See* NEA Mem. at 19. Plaintiffs do not take issue with this point. *See* Plf. Opp. at 11 (asserting that Harvey "remained an employee of NEA . . . until August 31, 1999").

We further showed that all three intervenors have admitted that the conduct of which they complain occurred only *after* Harvey became NEA-Alaska's permanent Assistant Executive Director. *See* NEA Mem. at 19. Plaintiffs do not even address – much less challenge – this showing with regard to intervenors Bhend and Chamara. Because plaintiffs point to *nothing* to suggest that Harvey mistreated Bhend and Chamara during the

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

Reply in Support of Renewed Motion of Defendant
NEA for Summary Judgment
Page 2 of 19

period that he was NEA-Alaska's Interim Assistant Executive Director, NEA is on this ground alone entitled to summary judgment on the claims involving these two intervenors.

With regard to the remaining intervenor – Carol Christopher – plaintiffs state only that Karen Floyd, who was an intern assigned to NEA-Alaska in late 1998, heard Harvey yell at Christopher "during the period that Tom Harvey was on assignment by NEA to NEA-Alaska, and was an NEA employee under the USEDP program." Plf. Opp. at 18-19. But this oblique testimony – which provides no specifics as to the nature of, or reasons for, the exchanges that may have taken place between Harvey and Christopher – is hardly sufficient to counter the admission by Christopher herself that Harvey treated her well during the period that he was Interim Executive Director, and that Harvey "changed when he got the job permanently."[1] Christopher's claims, like those of Bhend and Chamara, are predicated on conduct that, by the intervenors' own account, occurred after Harvey had ceased to have any connection with NEA. This provides grounds in and of itself for granting summary judgment to NEA.

---

[1] Ms. Christopher testified as follows:

> Q. [by Ms. Longenbaugh]: Okay. Do you remember being complimented on your hard work by Mr. Harvey?
>
> A.   In the beginning, when he first came.
>
> Q.   So are you saying that he – he changed?
>
> A.   Yes.
>
> Q.   At what point?
>
> A.   When he got – I believe, my perception is he changed when he got the job permanently.

App. Exh. 10, p. 11. (App. Exhs. 1-52, and the Declarations of Tom Harvey, Vernon Marshall and Patricia Orrange, have previously been filed. App. Exhs. 53-58 are submitted with this memorandum.)

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

Reply in Support of Renewed Motion of Defendant
NEA for Summary Judgment
Page 3 of 19

### B. NEA Cannot Be Held Responsible Under Title VII For Harvey's Alleged Harassment Of The Intervenors, Because NEA Was Not The Intervenors' Employer And NEA Did Not Interfere With Their Employment Opportunities With Their Employer

It is undisputed that NEA-Alaska, not NEA, was the intervenors' employer. That being the case, the parties are in agreement that NEA cannot be liable under Title VII unless the conduct that is alleged to have harmed the intervenors was caused by "interfere[nce]" on NEA's part "with [the intervenors'] employment opportunities with [NEA-Alaska]." *Association of Mexican-Am. Educators v. California*, 231 F.3d 572, 580 (9th Cir. 2000) ("*AMAE*"). *Compare* NEA Mem. at 14-18 *with* Plf. Opp. at 27-35 (discussing the "interference" caselaw).

In each of the cases cited by plaintiffs in which such an "interference" claim has been upheld, an entity that was not the plaintiffs' employer had prevented the plaintiffs from securing an employment opportunity that the employer was willing to provide. In *AMAE*, the state of California prevented school districts from hiring teachers who had failed an allegedly discriminatory state test; in *Gomez v. Alexian Brothers Hospital*, 698 F.2d 1019 (9th Cir. 1983), the plaintiff's employer wished to assign him to work as the director of a hospital's emergency room, but the hospital, which was not the plaintiff's employer, refused; and in *Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338 (D.C. Cir. 1973), supervisors at a hospital which was not the plaintiff's employer refused to let him work with patients. In each of those cases, the alleged discrimination was attributable solely to the third party and not to the plaintiffs' employer, and the Ninth Circuit upheld third party liability so as not to create a "loophole[ ] in Title VII's coverage." *AMAE*, 231 F.3d at 581.

This case presents no such situation, because NEA did not cause NEA-Alaska to deny any employment opportunity to the intervenors. Plaintiffs argue that, "[b]y placing Harvey in the NEA-Alaska workplace, and failing to take any action concerning his abusive conduct at NEA-Alaska while he was an NEA employee, NEA 'interfered' with plaintiff-

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

intervenors' ability to work in an environment free of harassment and intimidation." Plf. Opp. at 32. For the reasons that follow, plaintiffs' contention is meritless. On the undisputed facts, NEA did not do anything that could constitute actionable "interference" under the governing caselaw.

### 1. The Authority To Control Tom Harvey's Conduct In Supervising The Intervenors Rested Solely With NEA-Alaska, Not NEA

It is undisputed that NEA-Alaska had full control over Tom Harvey's conduct in supervising NEA-Alaska's employees, including full authority to require that Harvey treat NEA-Alaska's female employers properly and to discipline or terminate him if he did not; and it is undisputed that NEA did nothing to interfere with NEA-Alaska's exercise of that authority.

Throughout this litigation, NEA-Alaska has never suggested – indeed, it has firmly denied – that NEA played, or could have played, any role with respect to supervising Harvey's behavior in Alaska. And the record evidence on that point is undisputed. Harvey and his supervisor, NEA-Alaska Executive Director Vernon Marshall, have stated without qualification that only NEA-Alaska, and not NEA, had the authority to direct Harvey's work in Alaska, to supervise him, and to discipline or terminate him if necessary. (Harvey Decl. ¶¶ 4-5; Marshall Decl. ¶¶ 6-7.) NEA Director of Human Resources Patricia Orrange, and Charles Agerstrand, the President of the intervenors' staff union, have testified to precisely the same effect. (Orrange Decl. ¶ 10; App. Exh. 4, pp. 7-9.) *No* witness has testified otherwise.

So too, as a more general matter, the record is replete with testimony that participants in the USEDP program are subject to direction, supervision, discipline and termination only by the state affiliate for whom they are providing services, not by NEA. *See* NEA Mem. at 6-8, 22 n.13 (quoting declaration of Ms. Orrange and deposition testimony of Mr. Marshall, Mr. Agerstrand, Larry Diebold (a former USEDP Executive Director in Montana who was responsible for administering the USEDP nationwide from

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

1989 through 1999), Melvin Myler (who succeeded Mr. Diebold as principal administrator of the USEDP), and John Wilson (currently the Executive Director of NEA and formerly a state executive director)).[2] Again, *no* witness has testified to the contrary. And the record establishes without dispute that there has *never* been an occasion in which NEA has directed, supervised or disciplined any staff member of any state affiliate, in any circumstance, whether the staff member was a participant in the USEDP or not. (Orrange Decl. ¶¶ 6-8).

Thus, the simple and uncontroverted fact is that NEA's state affiliates are autonomous organizations whose staff members, from the Executive Director on down, whether participating in the USEDP or not, are answerable to and subject to the control of the affiliate's elected Board of Directors – and through them, the affiliate's members – *not* NEA. *See* NEA Mem. at 4-9. Plaintiffs have deposed more than 25 witnesses, including officers and employees of NEA and NEA-Alaska, the president of the intervenors' staff union, and persons who worked with Tom Harvey in Maryland, Mississippi and Alaska, and have found that there is not a *single witness* who disputes these facts.

In the face of this wealth of consistent testimony, plaintiffs base their arguments on two documents which they apparently believe should be taken as controverting what every witness has stated about this subject. Plaintiffs' reliance on those documents is unavailing.

a.  Plaintiffs make much of various provisions in the USEDP Guidelines issued by NEA. *See* Plf. Opp. at 20-21. But plaintiffs ignore the provision that is dispositive, which states that a USEDP participant is "[s]ubject to the control and direction of the governing bodies and officers of *the SA* [*i.e.*, the State Affiliate]." (Orrange Decl. Exh. B, p. 8 (emphasis added).) Similarly, the Guidelines provide that the authority to decide whether to terminate a USEDP participant for cause rests with "the SA." (*Id.*, p. 10.) The

---

[2] *See also* App. Exh. 50, p. 17 (transcript of deposition of Eugene Dryer) (only a state affiliate, not NEA, has authority to determine whether action should be taken against a USEDP participant due to "questionable behavior"); App. Exh. 53, p. 3 (transcript of deposition of Deloris Rozier) ("The participants in the USEDP are . . . controlled, managed, hired by the state affiliates, and we at NEA have nothing to do with them in terms of their actual hiring relationship with the affiliates").

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

Guidelines do not contain any provision that would give NEA authority to control a USEDP participant's conduct in supervising employees of a state affiliate, or to discipline the individual for such conduct. (Orrange Decl. ¶ 9 and Exh. B.) *See* NEA Mem. at 8-9, 21 and nn. 10, 11 (discussing provisions of the Guidelines cited by plaintiffs).

Plaintiffs make much of the fact that the Guidelines characterize USEDP Executive Directors as "employees" of NEA. Plaintiffs seem to believe that, based solely on the Guidelines' use of that word, a jury could reject the uncontroverted testimony of all of the witnesses and could conclude that NEA must in fact have control over how USEDP participants treat the employees of state affiliates. But, as the EEOC's own Enforcement Guidance points out, such matters cannot be determined from the label (such as "employee") that is used to describe the relationship between an individual and an entity. *See* NEA Mem. at 20. In particular, it is not uncommon for an entity that is responsible for paying an individual to identify that individual as an "employee" even if the entity has no control over the individual's conduct on the job. *See, e.g., Atchley v. Nordam Group, Inc.*, 180 F.3d 1143, 1153 (10th Cir. 1999) (company that supplied workers to another company and paid those workers did not control their conditions of employment and was not responsible for discrimination they experienced on the job, even though it identified itself as the workers' "employer"); *Kellam v. Snelling Personnel Servs.*, 866 F. Supp. 812, 815 (D. Del. 1994) (although individuals placed with other companies by the defendant personnel agency "were considered employees of the defendant" for tax purposes, the defendant did not have any control over their conduct on the job), *aff'd*, 65 F.3d 162 (3d Cir. 1995) (table).

USEDP participants are identified as NEA "employees" in order to qualify them for participation in certain benefit programs that are applicable to NEA "employees." *See* NEA Mem. at 8. The use of that word does *not* imply that NEA has the right to control how a USEDP participant treats employees of a state affiliate. The Guidelines themselves, in the provisions that deal directly with that very subject, foreclose such a contention, as

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

Reply in Support of Renewed Motion of Defendant
NEA for Summary Judgment
Page 7 of 19

does the uncontroverted testimony of every witness who addressed this subject. *See supra* at 5-6.

      b.      Plaintiffs also point to a provision of the settlement agreement between Harvey and the Mississippi Association of Educators ("MAE") which stated that, "[u]pon his departure from MAE, Tom Harvey's assignments under the USEDP Program will be directed by NEA, but they will no longer include any assignments in the state of Mississippi." *See* Plf. Opp. at 16. However that provision may be read, *see infra* note 5, plaintiffs cannot and do not contend that it gave NEA the right to control Harvey's conduct in supervising NEA-Alaska's employees. As we have noted, and as plaintiffs do not dispute, the provision cannot reasonably bear such an interpretation. *See* NEA Mem. at 24-25 n. 15.

      c.      In order to withstand summary judgment, plaintiffs must adduce *significantly probative* evidence that would allow a *rational* trier of fact to find in their favor. *See* cases cited in NEA Mem. at 13-14. Where every witness who was asked about this matter testified that NEA did *not* have any authority to control Tom Harvey's conduct in supervising NEA-Alaska's employees, and there is nothing in the record that could reasonably be interpreted as suggesting the contrary, a rational trier of fact could not possibly find that NEA possessed such authority. Thus, plaintiffs' assertion that NEA could have "take[n] . . . action concerning [Harvey's alleged] abusive conduct at NEA-Alaska while he was [in the USEDP program]," Plf. Opp. at 32, is contrary to the uncontroverted record evidence.[3] Rather, the authority, as well as the duty, to provide NEA-Alaska's employees a workplace free of sexual harassment lay with *NEA-Alaska*. *See*

---

[3] Plaintiffs assert that one NEA manager, Deloris Rozier, whose duties included managing NEA's intern program, was aware of Harvey's allegedly abusive conduct at NEA-Alaska because an intern, Karen Floyd, telephoned Ms. Rozier and told her that Harvey had yelled at Carol Christopher. *See* Plf. Opp. at 18-19. But Rozier, like other NEA representatives, had no authority to direct Harvey to change his behavior. Rozier testified that "it was not our business at NEA to get in [an] affiliate's business;" "[t]he participants in the USEDP . . . are controlled, managed, hired by the state affiliates, and we at NEA have nothing to do with them in terms of their actual hiring relationship with the affiliates." Ex. 53, pp. 2, 3.

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

Reply in Support of Renewed Motion of Defendant
NEA for Summary Judgment
Page 8 of 19

NEA Mem. at 14.  Here, as in *Anderson v. Pacific Maritime Ass'n*, 336 F.3d 924, 932 (9th Cir. 2003), "[NEA's] power to stop the hostile work environment was so limited that it cannot be said to have 'interfered' by failing to take corrective measures to stop the harassment when the power to take those measures belonged to [NEA-Alaska]."[4]

### 2. NEA's Role In Harvey's Coming To Alaska Does Not Constitute "Interference" That Could Render NEA Liable Under Title VII For Harvey's Subsequent Conduct

Plaintiffs' remaining theory is that, "[b]y placing Harvey in the NEA-Alaska workplace . . ., NEA 'interfered' with plaintiff-intervenors' ability to work in an environment free of harassment and intimidation," because Harvey was "a known harasser."  Plf. Opp. at 32, 33.  Although, as we shortly will demonstrate, Harvey was not a "known harasser," even if plaintiffs' assertion in that regard were factually correct it still would be the case that NEA's role in the process by which Harvey came to Alaska did not constitute "interference" such as could make NEA responsible for the alleged harassment of individuals who were not its employees.

---

[4] Plaintiffs emphasize a statement in the Ninth Circuit's opinion on the appeal of this case that NEA's argument for summary judgment involves "fact-intensive questions that have not been addressed by the district court and as to which the record has not been fully developed."  Plf. Opp. at 2, quoting *EEOC v. NEA*, 422 F.3d 840, 847 (9th Cir. 2005).  Plaintiffs overread that statement.  In their briefs to the Ninth Circuit, plaintiffs did not assert that the issues raised by NEA presented any disputed issues of material fact, or that additional discovery was needed.  (Copies of those briefs, of which the Court may take judicial notice, are attached.)  Rather, the EEOC's brief contained the following statement (at p. 22, n.10):

> This Court may . . . decline to the address the issues NEA raises.  *Erickson v. U.S.*, 976 F.2d 1299, 1302 (9th Cir. 1992) ("Because this is a factually intensive issue that the district court did not address, we will not do so here.  On remand, the district court . . . may entertain a motion for summary judgment based on this defense.")

Thus, the EEOC explicitly recognized that the issues NEA has raised are ripe for summary judgment.  Nor did the intervenors' brief suggest otherwise.  In these circumstances, the Ninth Circuit's statement that "the record has not been fully developed," is best understood as meaning simply that the briefs did not discuss the record in full detail, and the Court of Appeals did not have the benefit of this Court's analysis of the evidence pertaining to NEA's issues.  Even now, plaintiffs are unable to point to any dispute of material fact with respect to those issues.  And, far from taking the position that the record is incomplete, in the recent status conference plaintiffs informed this Court that no further discovery is necessary with respect to these matters.

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

a.  In the recent case of *Koester v. Hastings*, No. 1:02-cv-1895-DFH-TAB, 2005 U.S. Dist. LEXIS 3689 (S.D. Ind. Feb. 24, 2005), nurses employed by a nursing home alleged that they had been harassed by the Interim Administrator of the home, who had been "placed" in the home by an employment agency. *Id.* at \*1. The nurses alleged that the agency "was negligent in hiring [the administrator] and in placing him at the nursing home." *Id.* at \*4. The court held that it was immaterial whether the administrator was an "employee" of the agency: in attempting to hold the agency liable under Title VII, the plaintiffs had "lost sight of the basic structure of Title VII," *id.* at \*5, because the duty to provide the nurses with a work environment free of harassment rested with their employer, the nursing home, and *not* with the third party that had supplied a supervisor to the home, *id.* at \*\* 5-7. As the court observed, "[p]laintiffs have not cited, and the court has not found, any case holding a party liable under Title VII to persons who were not its employees under any circumstances at all comparable to these." *Id.* at \*7.

The same conclusion necessarily follows in this case under the Ninth Circuit's "interference" caselaw. The testimony is undisputed that NEA did not and could not require NEA-Alaska to select Tom Harvey as its Interim Assistant Executive Director. *See* NEA Mem. at 9-10. The USEDP Guidelines are consistent with that testimony; the Guidelines do not give NEA the authority to require a state affiliate to select a particular candidate, but instead provide that "*the SA* shall select . . . the person that it wishes to have serve . . .." (Orrange Decl. Exh. B, p. 5) (emphasis added). And it is a matter of simple fact that NEA *never* has required a state affiliate to select a particular USEDP participant. (Orrange Decl. ¶¶ 7-9; App. Exh. 51, p. 2.)[5] What plaintiffs persist in characterizing as NEA's "placing" of Harvey at NEA-Alaska consists of nothing more than the

---

[5] To the extent that plaintiffs seek to portray Harvey's separation agreement with MAE as inconsistent with these facts, *see* Plf. Opp. at 16, plaintiffs are giving the document an unreasonable reading. At most, the document indicates that, as long as NEA continued to contribute toward Harvey's compensation through the USEDP program, NEA could require Harvey to seek a position with a state affiliate. But it remained the case that state affiliates,

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

Reply in Support of Renewed Motion of Defendant
NEA for Summary Judgment
Page 10 of 19

fact that, when NEA-Alaska contacted NEA Regional Director Nelson Okino to require as to whether Okino was aware of any individuals who might be interested in serving as NEA-Alaska's Interim Assistant Executive Director, Okino mentioned Harvey as a possibility, *see* NEA Mem. at 10, and when NEA-Alaska pursued that possibility with Larry Diebold of NEA, Diebold said that

Harvey "could be available," *see* Plf. Exh. 12, pp. 4-7.  Thus, as Diebold testified, Harvey went to Alaska as "an accommodation of the request made by Alaska . . ..  This is not something that NEA said 'You must do this.'  It wasn't an assignment in that sense."  (App. Exh. 46, p. 9.)

This does not remotely constitute "interference" which could render NEA liable under Title VII for Harvey's alleged subsequent conduct toward the intervenors.  Under Ninth Circuit caselaw, a finding of "interference" requires, first, that the defendant had "some peculiar control over the employee's relationship with the direct employer," *Anderson*, 336 F.3d at 932, and second, that the defendant exerted that control in such a way that the defendant, rather than the plaintiffs' actual employer, was responsible for the discrimination alleged.  *See* cases cited *supra* at 4.  In this case, where the intervenors' employer (NEA-Alaska) not only had complete discretion as to whom to select as its Interim Assistant Executive Director but also had unfettered authority to control how that person behaved toward NEA-Alaska employees such as the intervenors, NEA's limited involvement in the situation cannot render NEA liable under Title VII.

b. In fact, "interference" could not be found here even if NEA's role in Harvey's "place[ment]" were greater than it actually was, because NEA had no ability to control

---

including NEA-Alaska, had the right to select their own staff, including Assistant Executive Directors.  Obviously, no agreement *between Harvey and MAE* could extinguish that right on the part of *NEA-Alaska* or of any other state affiliate.

Plaintiffs themselves, in their state-court complaint filed after this Court's earlier decision in this case, recognized that NEA-Alaska had the right not to select Harvey as its Interim Assistant Executive Director; plaintiffs alleged that NEA-Alaska was at fault for "retain[ing] Harvey as Interim Assistant Executive Director on or about March 1, 1998, [and] plac[ing] him in a supervisory capacity over a number of female employees of NEA-Alaska." (App. Exh. 54, ¶ 8.)

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

Reply in Support of Renewed Motion of Defendant
NEA for Summary Judgment
Page 11 of 19

Harvey's actual behavior toward NEA-Alaska's employees, which, as we have noted, was under the control solely of NEA-Alaska. *See supra* at 5-6. It would carry the "interference" doctrine far beyond the bounds permitted by Ninth Circuit precedent to hold that a third party is liable for conduct that is completely within the control of the plaintiff's employer and not the third party, merely because the third party had some involvement in the process by which the supervisor who committed the alleged harassment came to be hired by the employer.

Indeed, even a plaintiff's *employer* cannot be held liable under Title VII simply for having hired an individual who had a history of harassment while working for previous employers and who proceeds to engage in similar misconduct. In *Whitmore v. O'Connor Management, Inc.*, 156 F.3d 796 (8th Cir. 1998), a maintenance worker at a shopping mall was subjected to extreme sexual harassment by an employee named Bartee, who ultimately was convicted on criminal charges for sexual abuse of the plaintiff. The harassment began when the mall was managed by one company, and it continued after another company, General Growth, took over the management of the mall and hired both Bartee and the plaintiff to continue in their jobs. Even though the record "amply demonstrate[d] that General Growth was on notice of the outrageous and deplorable conduct on Mr. Bartee's part that occurred before General Growth took over management of the mall," *id.* at 800, the Eighth Circuit held that General Growth was not automatically liable for the abuse that took place after it had became the plaintiff's employer. Rather, the court held that General Growth could not be found liable unless the plaintiff brought those specific acts to the attention of managers at General Growth who were in a position to take action against Bartee.

If plaintiffs were correct that hiring a "known harasser" who proceeds to engage in further harassment establishes liability under Title VII, General Growth would have been held liable in *Whitmore*. Yet the Eighth Circuit found no liability, even though the plaintiff was harassed while General Growth was her actual employer. *Whitmore* thus squarely

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

Reply in Support of Renewed Motion of Defendant
NEA for Summary Judgment
Page 12 of 19

rejects the notion that the hiring of a "known harasser," in and of itself, renders even a plaintiff's *employer* – much less a third party like NEA – liable for subsequent acts of harassment. And we are aware of no case in which such a theory of liability has been upheld.[6]

c.   Although the points just made would defeat plaintiffs' claims against NEA even if NEA "knew" that Harvey was "a harasser" when NEA representatives spoke with NEA-Alaska about him,it bears noting that the record refutes such a contention in any event.

Tom Harvey has served as an association representative since the mid-1980's, first in Maine, then in Texas, then in Baltimore County, Maryland, then in Mississippi, and finally in Alaska. *See* NEA Mem. at 9. Over the roughly 15 years that Harvey was engaged in such work before coming to Alaska, plaintiffs point to a single female employee (Carole Jeffries) at a single location (Baltimore County), who allegedly told three NEA representatives that she was experiencing problems with Harvey. *See* Plf. Opp. at 5-16.[7]

---

[6] Plaintiffs cite a sentence in *EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1515-16 (9th Cir. 1989), which states that "employers are liable for failing to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known." *See* Plf. Opp. at 32. Even putting aside the fact that *Hacienda Hotel* was speaking of a plaintiff's *employer*, not a third party, plaintiffs read too much into the Court's reference to liability for failing to "remedy or prevent" a hostile work environment. *Hacienda Hotel* predates the Supreme Court's decisions in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), which establish standards for sexual harassment liability that are inconsistent with a broad duty to "prevent" harassment such as plaintiffs are positing. *See, e.g., Jones v. USA Petroleum Corp.*, 20 F. Supp. 2d 1379, 1386 (S.D. Ga. 1998) (under *Ellerth* and *Faragher*, employers do not have a duty to provide sexual harassment training). And in any event, *Hacienda* did not involve an attempt to hold an employer or a third party liable based on their knowledge of harassment that had occurred at some previous workplace. Rather, in *Hacienda*, the general manager of the hotel that employed the plaintiff was aware that the plaintiff was being subjected to ongoing harassment by agents of that employer. *See* 881 F.2d at 1515-16.

[7] Plaintiffs add that "[c]onflicting testimony has been offered concerning why Harvey was dismissed from his position as Executive Director for the NEA state affiliate in Mississippi [MAE]." *Id.* at 12. However, plaintiffs do not cite any evidence that any representative of NEA received information suggesting that Harvey engaged in sexual harassment at MAE. Plaintiffs note that Deloris Rozier testified that she observed Harvey "yelling" and "pointing his finger" at an MAE employee, *see* Plf. Opp. at 15-16, but plaintiffs neglect to mention that the employee was a male (Bill Lloyd). *See* Plf. Exh. 26, pp. 7-9. Ms. Rozier testified that MAE staff members told her

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

Reply in Support of Renewed Motion of Defendant
NEA for Summary Judgment
Page 13 of 19

Plaintiffs cannot and do not contend that those NEA representatives had any responsibility, or even any authority, to act on that report; as an employee of a *county* affiliate, Harvey was not in the USEDP and had no connection with NEA. Nor do plaintiffs contend that the NEA representatives who allegedly heard from Ms. Jeffries played any role in Harvey's coming to Alaska, or that the NEA representatives who *were* involved in Harvey's coming to Alaska had heard about the alleged Baltimore incidents.[8]

Thus, plaintiffs' claim against NEA regarding the so-called "placement" of Harvey at NEA-Alaska reduces to the notion that, when three NEA representatives allegedly were told by Carole Jeffries that Harvey was harassing her at the Baltimore County affiliate – an accusation that the NEA representatives had no authority even to investigate – the NEA representatives not only should have assumed the allegations to be true,[9] but should have informed every other representative of NEA across the country, and NEA should have continued to provide such notification down through the years, so that other NEA representatives would blackball Harvey if they were ever contacted about his possible candidacy for a position with any affiliate.

To suggest that NEA's "failure" to have taken those steps renders it liable under Title VII for any misconduct in which Harvey might engage in any subsequent employment situation is preposterous, and cannot possibly be brought within the narrow confines of the

---

that Harvey "yelled at everybody, men and women. It didn't matter." (NEA App. Exh. 53, p. 4.)

[8] Plaintiffs state that Carole Jeffries spoke to NEA representatives Earl Jones, Leon Felix and Eugene Dryer. *See* Plf. Opp. at 13-15. None of those individuals is alleged to have played any role in Harvey's coming to Alaska. The only NEA representatives who were involved in that process were Larry Diebold and Nelson Okino. *See supra* at 11-12. Plaintiffs do not contend that Diebold or Okino were aware of the Baltimore allegations. Diebold testified that he was not aware of those allegations, and Okino testified that he does not know who Carole Jeffries is. (App. Exhs. 55, 56.)

[9] Plaintiffs ignore the reality that not all allegations of harassment are true, and that it would have been irresponsible for the NEA representatives to whom Carole Jeffries allegedly spoke to have assumed that her version of her interactions with Harvey was factually correct and complete. Similarly, plaintiffs apparently expect this Court to assume that a charge that Harvey assaulted a representative of a nurses' union in Baltimore must have been true, *see* Plf. Opp. at 10-11, but plaintiffs are well aware that Harvey was acquitted of that charge. *See* App. Exh. 25, pp. 1-2.

Reply in Support of Renewed Motion of Defendant
NEA for Summary Judgment
Page 14 of 19

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

"interference" doctrine that governs Title VII claims brought against an entity that is not the plaintiffs' employer.

### 3. Plaintiffs' Title VII Claims Against NEA Should Be Dismissed Because No EEOC Charge Was Filed Against NEA

Plaintiffs' argument that the intervenors' EEOC charges against NEA-Alaska should be treated as if they had been filed against NEA, *see* Plf. Opp. at 38-41, should be rejected. As we have shown, this is not a situation in which the charges put NEA on notice that *its own conduct* was being challenged as discriminatory. *See* NEA Mem. at 25-28.[10] The other "exceptions" to the charge-filing requirement that are discussed by plaintiffs involve situations where two parties are "substantially identical," or are in a principal-agent relationship with respect to the conduct at issue. *See* Plf. Opp. at 39-41. That is not the situation here. *See* NEA Mem. at 4-5.[11]

## II. THE COURT SHOULD NOT EXERCISE JURISDICTION OVER ANY STATE-LAW CLAIMS, AND THOSE CLAIMS ARE WITHOUT MERIT IN ANY EVENT

As plaintiffs have noted, *see* Plf. Opp. at 42, NEA's opening memorandum did not address any state law claims, because it has been NEA's understanding that, when plaintiffs and NEA-Alaska agreed to dismiss the state court action that the plaintiffs had filed against NEA-Alaska, it was agreed that the dismissal would bar plaintiffs from pursuing any state-

---

[10] Plaintiffs' citation to *Kaplan v. International Alliance of Theatrical & Stage Employees*, 525 F.2d 1354 (9th Cir. 1975), *see* Plf. Opp. at 40-41, is misplaced for the additional reason that the language in the charge filed in that matter was unclear and could be read to refer to the international union as well as a local union. *See* 525 F.2d at 1359. That is not the case here.

[11] Plaintiffs make much of the fact that NEA-Alaska consulted with NEA, including NEA's General Counsel, concerning the charges. *See* Plf. Opp. at 21-23. But it is common for affiliated entities to assist one another in such matters, and this does not imply that the entities understand a charge against one of them to be a charge against both. *See, e.g., Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 125, 127 (7th Cir. 1989) (where EEOC charge was filed only against a subsidiary, the parent company was not a proper defendant, even though the parent "determines [the subsidiary's] personnel policies and both entities have the same attorneys, and thus [the parent] had notice of the charges against [the subsidiary]," because the parent "did not thereby have any notice of any charges against *it* nor did it have any opportunity to conciliate on its own behalf").

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

Reply in Support of Renewed Motion of Defendant
NEA for Summary Judgment
Page 15 of 19

law claims against NEA as well. Counsel for NEA-Alaska assured counsel for NEA that NEA-Alaska would not agree to

dismiss the state-court action if it would remain possible for plaintiffs to pursue state-law claims against NEA that would involve continued litigation regarding the conduct of Tom Harvey, who is presently NEA-Alaska's Executive Director. Furthermore, in NEA's brief to the Ninth Circuit in this case, NEA stated that, as a result of the dismissal of the state-court action, "the only claims still at issue are the Title VII claims," Brief for Defendant-Appellee National Education Association, *EEOC v. NEA-Alaska*, 9th Cir. Nos. 04-35029 & 04-35201, at 3 n.2, and plaintiffs did not take issue with that statement.

Plaintiffs now state, however, that they did not in fact agree to drop their state-law claims against NEA. Having no desire to initiate a swearing contest among counsel, we will assume *arguendo* for present purposes that plaintiffs did not so agree.[12] Even absent an agreement to dismiss plaintiffs' state-law claims, plaintiffs cannot prevail on those claims.

A. If this Court agrees that NEA is entitled to summary judgment on the Title VII claims, the Court should decline supplemental jurisdiction over any state-law claims. That is the course the Court took when it granted summary judgment on the Title VII claims in 2003, and it is even more appropriate at this juncture. The Court will have dismissed all claims against NEA over which it has original jurisdiction, which is reason in itself to decline jurisdiction over any state claims. *See* 28 U.S.C. § 1367(c)(3); *Koester, supra*, 2005 U.S. Dist. LEXIS 3689 at * 8-9. In addition, this case presents "exceptional circumstances" in which "there are other compelling reasons for declining jurisdiction," 28 U.S.C. § 1367(c)(4).

The "compelling reasons" contemplated by § 1367(c)(4) are present where "declining jurisdiction 'best accommodates the values of economy, convenience, fairness, and comity.'" *Executive Software N. Am. v. United States District Court*, 24 F.3d 1545,

---

[12] However, NEA reserves the right to pursue that issue if it should prove necessary.

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

Reply in Support of Renewed Motion of Defendant
NEA for Summary Judgment
Page 16 of 19

1557 (9th Cir. 1994). In this case, after having sued both NEA-Alaska and NEA in this Court, plaintiffs chose, after this Court granted summary judgment to both defendants on the Title VII claims, to proceed in state court solely against NEA-Alaska. Yet the complaint plaintiffs filed in state court contained numerous allegations concerning NEA, including an allegation that "Harvey's reputation for engaging in harassment and intimidation of females and female employees was well known by officials of the National Education Association." (App. Exh. 54, ¶¶ 6, 7.) Those allegations go to the heart of the state-law claims plaintiffs now seek to present against NEA in this Court.

Having invoked the state court's jurisdiction with regard to these matters, plaintiffs should not be free to revive them in this Court. At the very least, the state court should be the one to determine (i) whether that court's decision dismissing plaintiffs' claims against NEA-Alaska under AS 18.80.220, *see* App. Exh. 57, is preclusive as to state-law claims against NEA that involve the same facts, and (ii) what is the impact as to NEA of the subsequent voluntary dismissal with prejudice of all of plaintiffs' state-law claims against NEA-Alaska, *see* App. Exh. 58.

B.   If this Court nevertheless were to take jurisdiction of the putative state-law claims, NEA would be entitled to summary judgment on those claims.

1.   In the first place, the state-law claims are barred by Alaska's two-year statute of limitations, AS 09.20.070. Plaintiffs do not allege any wrongful conduct by NEA after September 1999, when, on their own theory, Harvey ceased to be an NEA "employee." *See supra* at 2.[13] But plaintiffs did not file their state-law claims against NEA until November 2002 – more than three years later – despite the fact that, from the time Harvey first arrived in

---

[13] "Surely, [NEA] could not be liable for negligent retention of [Harvey] once it no longer retained him," *Rehm v. Lenz*, 547 N.W.2d 560, 567 (S.D. 1996), and therefore such a claim "cannot survive beyond the point in time when [NEA] no longer employed [Harvey]," *id. See also Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981) (for limitations purposes, a violation "continues" only so long as there are "continual unlawful acts" by the defendants, as distinguished from "continual ill effects from an original violation").

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

Reply in Support of Renewed Motion of Defendant
NEA for Summary Judgment
Page 17 of 19

Alaska, plaintiffs believed that he was "put there and paid by NEA." (App. Exh. 44, p. 2. *See* NEA Mem. at 26.)

2.  Plaintiffs' putative state-law claims against NEA lack merit in any event. Plaintiffs' claims under AS 18.80.220 are subject to the same analysis as their Title VII claims, and fail for the same reasons. *See generally Ellison v. Plumbers & Steam Fitters Union Local 375*, 118 P.3d 1070, 1074 (Alaska 2005) (courts look to Title VII jurisprudence in applying AS 18.80.220). And plaintiffs' tort claims fail on the undisputed facts as to the limited nature of NEA's involvement in the matters of which plaintiffs complain. *See supra* at 11-12, 15.

## CONCLUSION

This Court should grant summary judgment to NEA on plaintiffs' Title VII claims, and the Court should dismiss plaintiffs' state-law claims.

Respectfully submitted this 6th day of January, 2006.

BREDHOFF & KAISER, P.L.L.C.           PRESTON GATES & ELLIS LLP


/s/ Jeremiah A. Collins                /s/ Douglas S. Parker
JEREMIAH A. COLLINS                    DOUGLAS S. PARKER, ABA # 8311168

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

Reply in Support of Renewed Motion of Defendant
NEA for Summary Judgment
Page 18 of 19

**CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2006, copies of the foregoing were served by mail on:

Terry A. Venneberg, Esq.
1126 Highland Avenue
Bremerton, WA  98337

Kenneth R. Friedman, Esq.
Friedman, Rubin & White
1126 Highland Avenue
Bremerton, WA  98337

Carmen Flores, Esq.
Senior Trial Counsel
Equal Employment Opportunity Commission
909 First Avenue, Suite 400
Seattle, WA  98104-1061


/s/ Pamela McKibben
Pamela McKibben

PRESTON GATES & ELLIS LLP
420 L STREET, SUITE 400
ANCHORAGE, ALASKA 99501-1937
TELEPHONE: (907) 276-1969

Reply in Support of Renewed Motion of Defendant
NEA for Summary Judgment
Page 19 of 19