EEOC vs. NEA-ALASKA  
Deposition of Nelson Okino

April 12, 2002  
"We'll cover your job ANYWHERE in the country!"

---

Page 1

```
 1  EQUAL EMPLOYMENT              *  IN THE
 2  OPPORTUNITY COMMISSION,       *  UNITED STATES
 3          Plaintiff,            *  DISTRICT COURT
 4  vs.                           *  FOR THE
 5  NATIONAL EDUCATION            *  DISTRICT OF ALASKA
 6  ASSOCIATION-ALASKA,           *  CASE NUMBER:
 7          Defendant.            *  CIVIL ACTION NUMBER:
 8                                *  A0-0225CV (JKS)
 9          *    *    *    *    *
10  DEPOSITION OF:
11          NELSON S. OKINO,
12  was taken on Friday, April 12, 2002, commencing
13  at 9:45 a.m., at the Equal Employment Opportunity
14  Commission, 1801 L Street, N.W., 7th Floor
15  Conference Room, Washington, D.C., before Cheryl
16  Jefferies, Notary Public.
17          COURT REPORTERS, ETCetera, INC.
18      Maryland                Washington
19    (410) 653-1115          (202) 628-DEPO
20  "We'll cover your job ANYWHERE in the country!"
21          1-800-947-DEPO
```

Page 2

```
 1  APPEARANCES:
 2
 3  On behalf of the PLAINTIFF:
 4      CARMEN FLORES, ESQ.
        U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
 5      Seattle District Office
        Federal Office Building
 6      909 First Avenue
        Suite 400
 7      Seattle, Washington 98104-1061
        (206) 220-6916
 8
 9  On behalf of the CHARGING PARTIES:
10      TERRY A. VENNEBERG, ESQ.
        BONJORNI, HARKNESS
11      1026 Harvey Road
        Auburn, Washington 98002
12      (253) 833-5840
13
    On behalf of the DEFENDANT:
14
        LESLIE LONGENBAUGH, ESQ.
15      SIMPSON, TILLINGHAST, SORENSEN & LONGENBAUGH
        One Sealaska Plaza
16      Suite 300
        Juneau, Alaska 99801
17      (907) 586-1400
18          - and -
19      MAURICE JOSEPH, ESQ.
        NATIONAL EDUCATION ASSOCIATION
20      1201 16th Street, N.W.
        Washington, D.C. 20036-3290
21      (202) 822-7035
```

Page 3

```
 1                  I-N-D-E-X
 2       Deposition of Nelson S. Okino
 3              April 12, 2002
 4
 5  EXAMINATION BY:                    PAGE:
 6  Ms. Flores                           5
 7  Mr. Venneberg                       63
 8  Ms. Flores                          86
 9  Mr. Venneberg                       87
10  Ms. Longenbaugh                     95
11  Ms. Flores                         103
12  Mr. Venneberg                      110
13
14  EXHIBITS:                          PAGE:
15  24  February 23, 1998 E-mail        46
16  25  9/21/98 E-mail                  46
17  26  November 10, 1998 Letter        53
18  27  Application Form                55
19  28  Payroll Records                 65
20
21       (Exhibits included with transcript.)
```

Page 4

```
 1              P-R-O-C-E-E-D-I-N-G-S
 2       MR. JOSEPH: In complying with the
 3  30(b)(6) subpoena, we have now proffered the
 4  remainder of the payroll records that were
 5  identified in the document submitted by the EEOC
 6  on or around the 15th of March, 2002,
 7  specifically Item Number 7. So we believe now
 8  that we've complied fully with Item Number 7.
 9  There is a possibility there may be some
10  duplication in there because of documents that
11  were produced yesterday pursuant to that same
12  item. But to that extent, those should be weeded
13  out.
14       MS. FLORES: Thank you.
15  WHEREUPON --
16          NELSON S. OKINO,
17  a Witness called for examination, having been
18  first duly sworn, was examined and testified as
19  follows:
20          EXAMINATION
21  BY MS. FLORES:
```

Case 3:01-cv-00225-JKS    Document 195-5    Filed 01/06/2006    Page 2 of 2

EEOC vs. NEA-ALASKA
Deposition of Nelson Okino

April 12, 2002
"We'll cover your job ANYWHERE in the country!"

### Page 41

1  involvement?
2  A. Right.
3  Q. Can you tell me, please, what you told
4  her?
5      MS. LONGENBAUGH: Objection.
6  A. I indicated to her what I've already
7  stated, that Larry Diebold had indicated that
8  Mississippi was making Mr. Harvey available for
9  an assignment, and that he was exploring whether
10 or not -- I perceived of an assignment or a
11 situation where Mr. Harvey would be able to
12 continue to work.
13 Q. Is that all you told her about that?
14     MS. LONGENBAUGH: Objection.
15 A. As far as I can recollect.
16 Q. Okay. And she asked you if you knew
17 Mr. Harvey and what did you tell her about that?
18     MS. LONGENBAUGH: Objection.
19 A. That I -- I'd known him for about 10
20 years or so, and in what capacity.
21 Q. Okay. And these questions and your

### Page 42

1  responses took 45 minutes?
2  A. Approximately.
3  Q. Okay. You've been able to summarize
4  to me what you told her and it's taken all of two
5  minutes. Is there anything else that you recall?
6      MS. LONGENBAUGH: Objection.
7  A. No.
8  Q. Do you recall if she asked you whether
9  he had any previous claims or problems that you
10 knew of?
11     MS. LONGENBAUGH: Objection.
12 A. No.
13 Q. Prior to your involvement in placing
14 Mr. Harvey in the Alaska office, were you aware
15 of any claims against Mr. Harvey in any previous
16 NEA employment setting?
17 A. No.
18 Q. Do you know an individual by the name
19 of Carole Jeffries?
20 A. No.
21 Q. Were you aware at that time that you

### Page 43

1  arranged the placement of Mr. Harvey to the
2  Alaska office, that he had been charged with
3  assault by a nurse?
4      MS. LONGENBAUGH: Objection.
5      MR. JOSEPH: Objection.
6  Q. Answer.
7  A. No.
8  Q. I'm sorry, I didn't mean to snap at
9  you.
10 A. No.
11 Q. No?
12 A. No.
13 Q. At the time that Mr. Diebold called
14 you, what exactly did you know about Mr. Harvey
15 in terms of his work performance with NEA?
16 A. Very little, other than the fact that
17 Mr. Diebold indicated that he was available.
18 Q. And had he, to your knowledge,
19 exhausted the contract with Mississippi at the
20 time that he --
21 A. I'm sorry?

### Page 44

1  Q. Had his contract concluded with
2  Mississippi at the time they made him available?
3      MR. JOSEPH: Objection.
4  A. It was my understanding that he still
5  had a personal service contract in place.
6  Q. So what did you do next after this
7  conversation with Mr. Diebold?
8      MR. JOSEPH: Objection. Vague as to
9  time. "Do next," what do you mean?
10 Q. After the conversation with Mr.
11 Diebold where he made it known to you that Mr.
12 Harvey was available, did you do anything towards
13 helping to find him another spot or assignment?
14 A. I contacted Vernon Marshall.
15 Q. And why Vernon Marshall?
16 A. Vernon Marshall and I had had previous
17 conversations about his temporary vacancy in the
18 assistant executive director's position.
19 Q. So what did Mr. Marshall say to you --
20 I mean, you contacted him, and what did you say
21 to him?