IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

Nos. 04-35029 & 04-35201

---

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff-Appellant,

and

CAROL CHRISTOPHER, et al.,

    Plaintiffs-Intervenors-Appellants,

v.

NATIONAL EDUCATION ASSOCIATION-ALASKA, et al.,

    Defendants-Appellees.

---

On Appeal from the United States District Court
for the District of Alaska

---

Reply Brief of Equal Employment Opportunity Commission

---

| | |
|---|---|
| ERIC S. DREIBAND<br>General Counsel | JENNIFER S. GOLDSTEIN<br>Attorney |
| LORRAINE C. DAVIS<br>Acting Associate General Counsel | EQUAL EMPLOYMENT<br>  OPPORTUNITY COMMISSION<br>1801 L Street, N.W., 7th Floor |
| CAROLYN L. WHEELER<br>Assistant General Counsel | Washington, DC 20507<br>(202) 663-4733 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

REPLY TO BRIEF OF NEA-ALASKA ............................................................................. 1

    A.    Tom Harvey's persistent, abusive treatment of female employees is evidence of discrimination because of sex ........................................... 1

    B.    Tom Harvey's unrelenting abuse of female employees created a hostile work environment ............................................................................. 11

REPLY TO BRIEF OF NEA ............................................................................................. 14

Statement of Issues ............................................................................................................ 14

Statement of Facts ............................................................................................................. 14

Argument ........................................................................................................................... 22

    A.    NEA is properly named as a defendant because it unlawfully interfered with the opportunity of female employees to work in an environment free of discriminatory harassment and abuse ........................................... 22

    B.    Because NEA was aware of the charge, assisted NEA-Alaska in responding to the charge, and knew of its own role in the hostile work environment, the procedural prerequisites were satisfied ............................. 26

CONCLUSION .................................................................................................................. 29

CERTIFICATE OF COMPLIANCE ................................................................................. 29

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

Abramson v. William Patterson Coll., 260 F.3d 265 (3d Cir. 2001) ...... 7

Anderson v. Pac. Mar. Ass'n, 336 F.3d 924 (9th Cir. 2003) ...... 22, 26

Ass'n of Mexican-Am. Educators v. Calif., 231 F.3d 572 (9th Cir. 2000) (en banc) ...... 22

Brooks v. City of San Mateo, 229 F.3d 917 (9th Cir. 2000) ...... 12, 13

Burlington Industries v. Ellerth, 524 U.S. 742 (1998) ...... 9

Davis v. Coastal Int'l Sec., 275 F.3d 1119 (D.C. Cir. 2002) ...... 7

EEOC v. First Midwest Bank, 14 F.Supp.2d 1028 (N.D. Ill. 1998) ...... 28

EEOC v. Pet, Inc., 612 F.2d 1001 (5th Cir. 1980) ...... 28

EEOC v. Pierce Packing, 669 F.2d 605 (9th Cir. 1982) ...... 28

EEOC v. Zia Co., 582 F.2d 527 (10th Cir. 1978) ...... 28

Ellison v. Brady, 924 F.2d 872 (9th Cir. 1991) ...... 7, 12

Erickson v. U.S., 976 F.2d 1299 (9th Cir. 1992) ...... 22

Faragher v. City of Boca Raton, 524 U.S. 775 (1998) ...... 9

Gomez v. Alexian Bros. Hosp., 698 F.2d 1019 (9th Cir. 1983) ...... 22

Hall v. Gus Constr. Co., 842 F.2d 1010 (8th Cir. 1988) ...... 12

Hardin v. S.C. Johnson & Son, 167 F.3d 340 (7th Cir. 1999) ...... 7, 8

Harris v. Forklift Sys., 510 U.S. 17 (1993) ...... 12

Int'l Bhd. of Teamsters v. U.S., 431 U.S. 324 (1977) .................................................. 7

Kopp v. Samaritan Health Sys., 13 F.3d 264 (8th Cir. 1993) ..................................... 8

Kortan v. California Youth Authority, 217 F.3d 1104 (9th Cir. 2000) ..................... 12

Montero v. AGCO Corp., 192 F.3d 856 (9th Cir. 1999) ........................................... 10

Nichols v. Azteca Rest. Enters., 256 F.3d 864 (9th Cir. 2001) ................................. 10

Oncale v. Sundowner Offshore Services, 523 U.S. 75 (1998) ................................... 6

Palesch v. Missouri Comm'n on Human Rights, 233 F.3d 560 (8th Cir. 2000) ........ 7

Ray v. Henderson, 217 F.3d 1234 (9th Cir. 2000) .................................................. 12

Sanchez v. City of Santa Ana, 936 F.2d 1027 (9th Cir. 1990) ................................. 13

Schnellbaecher v. Baskin Clothing, 887 F.2d 124 (7th Cir. 1989) .......................... 28

Scusa v. Nestle U.S.A., 181 F.3d 958 (8th Cir. 1999) ............................................... 7

Sosa v. Hiraoka, 920 F.2d 1451 (9th Cir. 1990) ..................................................... 27

Steiner v. Showboat Operating Co., 25 F.3d 1459 (9th Cir. 1994) .......................... 8

Vasquez v. County of Los Angeles, 349 F.3d 634 (9th Cir. 2004) ........................... 13

Wrighten v. Metro. Hosp., 726 F.2d 1346 (9th Cir. 1994) ...................................... 27

STATUTES and GUIDANCE

42 U.S.C. § 2000e-5(f)(1) ........................................................................................ 28

EEOC Enforcement Guidance, "Vicarious Employer Liability for Unlawful Harassment by Supervisors," (found at http://www.eeoc.gov/policy/docs/harassment.html) ............................................ 10

## REPLY TO BRIEF OF NEA-ALASKA

### A. Tom Harvey's persistent, abusive treatment of female employees is evidence of discrimination because of sex.

In its opening brief, the Commission discussed the considerable evidence that NEA-Alaska Assistant Executive Director Tom Harvey's abusive behavior created a hostile work environment for the female employees in the Anchorage office of NEA-Alaska. There was evidence that Harvey "yelled," "screamed," and swore at his female subordinates at NEA-Alaska on a "daily" basis. There was evidence that he "continually... berated" female employees. There was evidence that Harvey's abuse of female employees was often physically threatening: Julie Bhend, Carol Christopher, and Carmela Chamara all described incidents in which Harvey screamed in their faces, shook his fists in their faces, lunged at them – all meant to intimidate, to get them to "cower down." Finally, there was evidence that Harvey's conduct had a profound impact on the female employees, who testified to feeling "distraught," "physically threatened," and "scare[d] . . . to death" in their workplace.

NEA-Alaska, in its brief in response, claims this evidence is not enough to show discrimination because of sex. NEA-Alaska emphasizes that Harvey was "abrasive and sometimes combative" to male employees too, and claims that its male and female employees thus "were exposed to like conduct from Harvey." NEA-AK Br. 32, 36. The only difference between the men and women, NEA-Alaska asserts,

was that the women found Harvey's conduct more upsetting than did the men. NEA-AK Br. 38 (plaintiffs have shown only *"their subjective belief* that Harvey was more abusive towards them"); NEA-AK Br. 45 (intervenors' "subjective interpretation of Harvey's words and conduct" insufficient to establish gender-based harassment); NEA-AK Br. 38 (Harvey's "unpleasantness" not "*objectively* gender based").

NEA-Alaska's characterization of this case is patently incorrect. The Commission's gender harassment claim is *not* predicated on subjective interpretations; it is based on the record evidence showing that Harvey *in fact* behaved abusively towards female employees far more often than towards men, that he treated women with more venom and hostility, and that he was more physically threatening toward women than toward men.

NEA-Alaska states that Harvey yelled at "six" men. NEA-AK Br. 27-28. Of those men, Mark Jones testified that Harvey raised his voice at him only on "a couple of occasions" and only for a "very short" period of time. ER324. The record indicates that Harvey "raised his voice" at Don Oberg "[o]ne time" when asking Oberg about how some bargaining was going. ER328. NEA-Alaska states that Bhend "observed Harvey . . . raising his voice to [Rich] Kronberg." NEA-AK Br. 27 (citing ER288-289). In fact, Bhend stated she observed "one instance" when Harvey yelled at Kronberg when Kronberg went into a "conference room because [Harvey] was yelling at Carol [Christopher] so much. And [Kronberg] went in to intervene and

2

I think Mr. Harvey's voice was raised at that time. I think he settled [down] after Mr. Kronberg went in." ER289; see also ER189 (Christopher describing same incident: Harvey is "yelling and screaming, and then . . . he gets right in my face with both of his fists, and he's shaking them, and he's stiff. . . . And I'm bracing myself, because I thought I was going to be hit. . . . And then Rich Kronberg comes around, and goes . . . what's going on here. . ."). NEA-Alaska lists Clarence Bolden as a man Christopher "witnessed receiving [yelling] treatment," NEA-AK Br. 27. Christopher actually stated only that Harvey "[p]robably" yelled at Bolden. ER211. NEA-Alaska also lists James Alter as one of the men "upset" by Harvey's yelling. NEA-AK Br. 28. Alter described one occasion when Harvey yelled at him while remaining seated on his side of the desk. ER336. Although NEA-Alaska asserted in its brief that "[t]he exchange 'upset' Alter," NEA-AK Br. 28 (citing ER336), Alter himself did not describe it that way. It was the attorney deposing Alter who used the word "upset" in questioning Alter about the yelling incident. ER336 ("Q. Would you say that this incident upset you?"). Alter initially answered "Yeah," but then immediately qualified his answer: "I mean, I guess it's all relative. I mean, I obviously didn't like it, and I thought it was totally inappropriate." ER336.

The accounts of female employees differ markedly from those of the men.[1]

---

[1] NEA-Alaska asserts that Harvey "'yelled' at more male than female NEA-Alaska employees (six men versus five women)." NEA-AK Br. 46-47 n.15. It is unclear how defendant arrived at the latter number, for the record indicates that Harvey

3

Christopher testified that "every day" she experienced some kind of abusive behavior from Harvey – whether it be "screaming and yelling," shaking his fists "right in [her] face," or pointing his finger in her face and yelling in order to intimidate her. ER178, 189-91. Bhend also described an environment that was hostile on "a daily basis." According to Bhend, Harvey yelled at her frequently, and in a "loud and threatening" voice meant "to intimidate" her. ER302-03. Bhend described incidents in which Harvey shook his fist in her face, slammed a table, lunged at her, and grabbed her shoulders in physically threatening ways. ER282-85, 297. Finally, Chamara described abusive behavior so frequent and "physically threatening" that she felt that she never knew "if he's going to explode, if he's going to come at you..... [it was ] like working with a ticking time bomb." ER584.

As the Commission discussed in its opening brief (at 14), there was one man – Jeff Cloutier – who described himself as "upset" after an interaction with Harvey.[2] The record indicates that this incident was an aberration, however. In general, if

---

"yelled" at or was abusive towards at least ten female employees: Christopher, Bhend, Chamara, Gayle Pierce (ER226), Kimela Cherry (ER295), Virginia McKinney (ER296), Barb Young (ER296), Clare Lewis (ER296), Sandy White (ER296), and Kay[e] Sullivan (ER210). Regardless, the critical distinction was that Harvey's treatment of male employees generally was more like "bantering," ER209, whereas women experienced far more frequent and abusive treatment.

[2] NEA-Alaska incorrectly asserts that the Commission's brief did "not acknowledge that Cloutier was left 'shaky' and 'trembling'" after the incident with Harvey. NEA-AK Br. 37 n.8. In fact, the Commission's brief states: "Cloutier described himself as feeling 'shaky' and having 'trembling' legs." EEOC Br. 14.

4

Harvey yelled at Cloutier, his tone was far less hostile – more like yelling, "then, let's go have a beer kind of thing." ER211; see also ER209 (Harvey's loud and profane interactions with Cloutier were more like "bantering," and would be followed "at the end of the day" by "talking, laughing, laughing"). Indeed, Cloutier himself described the work environment at NEA-Alaska as hostile for the women, not the men. ER573 ("it was the women who felt most vulnerable to . . . [Harvey's] berating and loud voice'); id. ("berating" "was about getting in their space and Harvey being angry and hollering at them. That was the general fear of the women at our office."). What the record thus demonstrates is that Harvey was nasty, abusive, and physically threatening towards female employees on a regular basis; he was not similarly abusive to men.

NEA-Alaska acknowledges the Commission's basic argument – that the evidence shows there were more instances of abusive conduct with women, and that the abuse was more severe – but contends this evidence nonetheless cannot establish gender-based harassment. NEA-Alaska argues, somewhat cryptically, that the comparative evidence is insignificant under Title VII because "there is no such 'bright line' numerical rule." NEA-AK Br. 34. It is unclear precisely what NEA-Alaska means by its attack on a "numerical rule." If defendant means to argue that comparative evidence of more frequent, more severe abuse of women cannot suffice to show gender discrimination, its argument is at odds with clear Supreme Court

5

precedent. In <u>Oncale v. Sundowner Offshore Services</u>, 523 U.S. 75 (1998), the Court expressly identified "comparative evidence about how the alleged harasser treated members of both sexes" as one of the basic methods of showing "'discriminat[ion] . . . because of . . . sex.'" <u>Id.</u> at 80-81 (quoting Title VII). The Commission did just that; it produced substantial evidence that Harvey treated women far worse than men.

NEA-Alaska suggests something more *is* required. NEA-Alaska repeatedly points to the fact that Harvey's conduct was "devoid of sexually explicit or implicit language, stereotyping, innuendo, or animus." NEA-AK Br. 37; NEA-AK Br. 34 n.6 ("sexually explicit language, stereotyping, or animus" absent); NEA-AK Br. 38 ("no epithet, no stereotyped work assignment"); NEA-AK Br. 39-40 (Harvey's conduct "bears no sexist overtones"). But as NEA-Alaska itself acknowledges, the law does not require sexual or gender-specific conduct. NEA-AK Br. 33, 44. What is required, the Supreme Court has explained, is simply evidence from which "an inference of discrimination on the basis of sex" can be drawn. <u>Oncale</u>, 523 U.S. at 80. Such an inference could reasonably be drawn here. A jury could infer from the evidence of more severe and frequent abuse of women that Harvey was a bully who liked to pick on women, or who found it easier to pick on women. A jury could infer that Harvey picked on women because he does not like women. Or a jury could simply find that Harvey unwittingly "exposed [women] to disadvantageous terms or conditions of employment." <u>Oncale</u>, 523 U.S. at 80 (quotations omitted); <u>see also</u>

6

Int'l Bhd. of Teamsters v. U.S., 431 U.S. 324, 335 n.15 (1977) (discriminatory motive can be inferred from "mere fact of differences in treatment"); Ellison v. Brady, 924 F.2d 872, 880 (9th Cir. 1991) (conduct unlawful "even when harassers do not realize . . . their conduct creates a hostile working environment"); Abramson v. William Patterson Coll., 260 F.3d 265, 277-78 (3d Cir. 2001) (conduct need not be "linked" to "discriminatory animus;" intent to discriminate can be inferred from comparative evidence).

None of the litany of cases NEA-Alaska lists in its brief (at 39-44) holds otherwise. What those cases all held was that the particular evidence presented was insufficient to give rise to an inference of gender discrimination. See, e.g., Davis v. Coastal Int'l Sec., 275 F.3d 1119, 1122-24 (D.C. Cir. 2002) (evidence indicated only that male plaintiff harassed by male co-workers because they "hated each other," not because of gender, especially since no other man was subject to similar behavior); Palesch v. Missouri Comm'n on Human Rights, 233 F.3d 560, 567 (8th Cir. 2000) (single person subject to harassment showed only that harassment was due to "personality conflicts"); Scusa v. Nestle U.S.A., 181 F.3d 958, 965 (8th Cir. 1999) (no gender harassment claim where plaintiff testified "she believed . . .[the harasser's] attitude and . . .comments had nothing to do with the fact that she is a woman"). Indeed, one of defendant's cited cases emphasizes that conduct need not be "explicitly sexual or racial in order to create a hostile work environment." Hardin v.

7

S.C. Johnson & Son, 167 F.3d 340, 345 (7th Cir. 1999).[3] What sets this case apart from the cases NEA-Alaska cites is the evidence produced, namely the evidence that Harvey treated female employees worse than he treated men. Cf. Steiner v. Showboat Operating Co., 25 F.3d 1459, 1463 (9th Cir. 1994) (harassment gender-based where abuse of women was "different" than abuse of men); Kopp v. Samaritan Health Sys., 13 F.3d 264, 269-70 (8th Cir. 1993) (where harasser abused women more frequently and severely, evidence of gender-based harassment sufficient).

Finally, NEA-Alaska's brief repeatedly points out that Christopher, Bhend, and Chamara did not file a grievance over Harvey's conduct. NEA-AK Br. 9 ("Chamara did not grieve any aspect of her treatment by Harvey"); NEA-AK Br. 17 (Bhend "never filed" grievance"); NEA-AK Br. 26 (Christopher "did not grieve any action of Harvey"); NEA-AK Br. 36 (intervenors "ignored" grievance procedure). It is unclear precisely what conclusion NEA-Alaska would have this Court draw from that fact. As the Commission noted in its opening brief, the three women all complained to Harvey about his abusive behavior. Harvey's response was either to ignore their complaints or to threaten them. ER204 (Harvey told Christopher not to "think you can do anything about it...."); ER154 (Harvey threatened Chamara that if she

---

[3] Hardin went on to hold there was insufficient evidence of discrimination where the harasser used similarly offensive language with all employees – male and female – and plaintiff alone (not all or most women) was subject to some non-verbal conduct, such as allowing a door to close in her face. Such conduct was "'too tepid'" to comprise discrimination. 167 F.3d at 346.

8

documented a particular conversation, he would "chase it" with negative paperwork). Christopher complained to the Executive Director as well, to no avail. ER317. And the union itself urged employees not to file a grievance, but to blow a plastic whistle if Harvey started to abuse them. ER154 (union representative advised against filing grievance); ER573 (whistles "only tangible way" to protect employees).

If NEA-Alaska means to suggest that the lack of a grievance should preclude liability for Harvey's harassment, it misunderstands the applicable legal standards for employer liability. Under Faragher v. City of Boca Raton, 524 U.S. 775 (1998), and Burlington Industries v. Ellerth, 524 U.S. 742 (1998), an employer is liable for a hostile environment created by a supervisor. An employer may have an affirmative defense where there is no tangible employment action, Ellerth, 524 U.S. at 765, but NEA-Alaska never raised the affirmative defense in the district court or in its brief to this Court. It therefore waived any argument that the failure to grieve should absolve it of liability.

Even if NEA-Alaska had invoked the Faragher/Ellerth defense, it would fail. The defense requires that an employer show, inter alia, that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior. Id. Here, NEA-Alaska had no policy prohibiting sex-based harassment or discrimination, nor